JESSE BROWN *against* THE UNION INSURANCE COMPANY
AT NEW-LONDON.

4d 179
67 _ 128

MOTION for a new trial.

This was an action of *assumpsit* on a policy of insurance on the cargo of the ship *Washington*, warranted *American*.

The defendants pleaded the general issue; and on trial to the jury, it was proved that the ship with her cargo was captured, and carried into *Antigua*. The defendants, in their defence, produced a copy of the proceedings, and decree of the court of admiralty, by which the property was condemned as good and lawful prize, belonging, at the time of the capture, to the enemies of the crown of *Great Britain*. The plaintiff then offered parol evidence to show, that the property was in fact *American;* to which the defendants objected, on the ground that the decree of the court of admiralty was *conclusive* evidence of the character of the property. But the court admitted the evidence offered by the plaintiff, and the jury found a verdict in his favour. The defendants moved for a new trial, on the ground that this evidence ought not to have been admitted; and the court reserved the question for the consideration of the nine judges.

*In an action on a policy of insurance, the sentence of a foreign court of admiralty condemning the property insured as enemies' property, is conclusive evidence to falsify a warranty of neutrality.*

*Goddard* and *Law*, in support of the motion. The only question in this case is, whether the decree of the admiralty court at *Antigua* is conclusive evidence that the property insured was enemies' property, and not *American ?* There being no statute provision on this subject, recourse must be had to the *common law* for a decision. Before our courts the question is *res integra.* There is nothing in our local situation, in the princi-

ples of our government, in our state of society, or in our general system of jurisprudence, that furnishes any reason for departing from the *English* common law. But in the *English* courts this question is at rest. By a course of decisions it is settled, " That wherever the ground of the sentence is manifest, and it appears to have proceeded expressly upon the point in issue between the parties ; or wherever the sentence is general, and no special ground is stated, there it will be conclusive and binding, and the common law courts will not take upon themselves, in a collateral way, to review the proceedings of a *forum* having competent jurisdiction of the subject matter." *Park*, 502. *6th edit.* In support of this position, which the able writer from whom it is cited has given as the result of all the cases upon the subject, the following authorities are particularly relied on. *Bull. N. P.* 244. *Bernardi* v. *Motteux*, *Doug.* 574. *Barzillai* v. *Lewis*, *Park*, 469. *6th edit.* *Sallouci* v. *Woodmass*, *id.* 471. *Geyer* v. *Aguila*, 7 *Term Rep.* 681. *Christie* v. *Secretan*, 8 *Term Rep.* 193. *Lothian* v. *Henderson*, 3 *Bos. & Pull.* 499. *Baring* v. *Royal Exchange Assurance Company*, 5 *East*, 99. *Pollard* v. *Bell*, 8 *Term Rep.* 434. *Bolton* v. *Gladstone*, 5 *East*, 155. Our case is exempt from the subordinate or collateral questions that arose in many of the *English* cases. The decree declares the property insured to be enemies' property, and the condemnation proceeds expressly upon that ground. It is admitted, that the admiralty court had jurisdiction of the subject matter.

This question has been agitated by *American* jurists; and though there has not been a uniformity of decision or opinion, we contend that the preponderance of authority is in favour of the conclusiveness of the sentence. See the remarks of Judge *Paterson*, in 3 *Dall.* 86. 88. and of Judge *Iredell*, in 3 *Dall.* 91. where this point came up incidentally. In *Vandenheuvel* v. *The United Insurance Company*, 2 *Johns. Cas.* 127. Judges *Benson*, *Kent* and

June, 1810.

BROWN
v.
UNION
INSUR. Co.

*Radcliff*, upon very full consideration, decided in favour of the doctrine for which we contend; and though that decision was afterwards reversed by the *court of errors*, (2 *Johns. Cas.* 451.) yet, when we consider how these courts are respectively constituted, there can be little doubt as to which decision is entitled to most respect in another state. In *Calhoun* v. *The Insurance Company of Pennsylvania*, 1 *Binn.* 295. 299. it was conceded by eminent counsel, that a decree of a foreign court of admiralty condemning property as enemies' property *generally*, is conclusive upon the warranty of neutrality. In *Dempsey's* case, 1 *Binn.* 299. n. (*f*), it was decided by the *supreme court*, that a condemnation *as prize* is conclusive, not only to its *direct effects*, but also as to the *facts directly decided by it.* This judgment was affirmed in the *court of errors*, after two arguments, by Presidents *Rush*, *Roberts*, *Hamilton*, *Young* and *Wilson ;* President *Cooper* only dissenting.(*a*) The same principle was established by the *supreme court* of the *United States* in *Croudson et al* v. *Leonard*, 4 *Cranch*, 424.

To these authorities may be added, in support of the general doctrine for which we contend, a course of decisions from an early period to the present time regarding the conclusive effect of the judgment of a court of *exclusive* jurisdiction. See *Bunting's* case, 4 *Co.* 29. *Dutchess of Kingston's* case, *Amb.* 756. S. C. 11 *St. Tr.* 261. *Hughes* v. *Cornelius*, 2 *Show.* 202. *Stewart* v. *Warner*, 1 *Day*, 142. *Swift's Ev.* 15, 16.

If considerations of convenience, which are more properly addressed to a legislature than to a court of law, are to have any weight in the decision of this question, they will operate in our favour. The insured is in possession of the evidence of neutrality; the insurer cannot be. The insured can but maintain the neutrality, which he has warranted; and it is reasonable that he should be required to do so. He has received a con-

(*a*) The opinion of Judge *Cooper* has been published separately, edited by Mr. *Dallas. Phil.* 1810. *pp.* 96.

sideration for this in the reduced premium which he has paid.

*Daggett*, contra. The only question in this case is, whether the sentence of a foreign court of admiralty finding the property on which this insurance was made to be enemies' property, is conclusive against the insured so as to falsify his warranty ?

1. It is not to be denied that the courts in *Westminster Hall*, for about thirty years past, have decided in favour of the conclusiveness of these foreign sentences. In five or six cases, the point was directly made and adjudged ; and in many others, the courts sanction the doctrine. It is also true, that wherever the judges there can by possibility distinguish the cases so as to deliver them from the operation of that rule, they do it eagerly. The injustice of the decisions in the prize courts in *France*, and in the *West-India Islands*, has appeared so flagrant and so outrageous, that the *English* courts do not always *speak* of them with so much respect as they feel themselves bound to *show*, by sanctioning their decrees. Lord *Kenyon*, in *Pollard* v. *Bell*, 8 *Term Rep.* 437. says, " I do not think they were characterized too strongly at the bar, when it was stated, that they all proceeded on a system of plunder." Lord *Ellenborough*, in the *nisi prius* case of *Fisher* v. *Ogle*, 1 *Campb.* 420. says, " It is by an *overstrained* comity that these sentences are received as conclusive evidence of the facts which they positively aver, and upon which they specifically profess to be founded." In this country, it has long been proverbial, that these prize courts of both belligerents, in all questions affecting neutrals, act regardless of those fundamental rules which should govern courts of justice. Thus situated, this court is called upon, for the first time, to pronounce on the effect of one of these foreign sentences in a contract of insurance. I say for

6

the first time, because I do not understand it to be claim- June, 1810.
ed, that we have any precedent on the point.

2. It seems to be contended, in behalf of the under-
writers, that this is a doctrine of the common law as un-
derstood before the decisions above named; and,
therefore, obligatory on our courts. In support of this
position are cited *Bunting's* case, 4 *Co.* 29. *Dutchess of
Kingston's* case, 11 *St. Tr.* 261. *Hughes* v. *Cornelius*, 2
*Show.* 202. and *Stewart* v. *Warner*, 1 *Day*, 142. In all
these cases it was decided, that the judgment of a fo-
reign court was conclusive as to its *direct* effect. Thus,
a judgment dissolving a marriage is conclusive of its
being dissolved; a judgment condemning a vessel and
declaring it forfeited devests the owner of his property,
and a sale thereof is declared valid. This is, undoubt-
edly, sound law; contrary principles would be very mis-
chievous. But in the case at bar much broader ground
is taken, *viz.* that *every fact* found by a foreign court is
conclusive on all concerned. No authority of the an-
cient common law proceeds so far.

I contend also that the principles of the common law
are opposed to this doctrine. First, no man shall be af-
fected by a judgment to which he is not party or privy.
This is just, rational, and consonant to the rules of mu-
nicipal law in every well regulated community.

Secondly, foreign judgments are not, at common law,
*conclusive* on *parties* to them. They are received only
as *primâ facie* evidence. *Walker* v. *Witter*, *Doug.* 1.

It is said, however, that all the world are parties to
these foreign sentences of admiralty and ecclesiastical
courts. This is, at most, a mere fiction. The fact is,
that the persons in interest not unfrequently know no-
thing of the process against the property till they re-
ceive the sentence of condemnation.

3. There is no safety in adopting this principle.

First, if the insured has complied with his warranty,
he ought to recover on this contract of indemnity; and

so in every similar case. He stands ready to prove the property *American*, and thus to verify his warranty. The insurer answers, that fact has been found against you by a foreign court. The insured replies, that foreign court, from its constitution, was intended so to decide that fact. Shall our citizens be thus compelled to submit the decision of their most important interests to tribunals created to plunder them?

Secóndly, these prize courts are not governed, as it is pretended they are, and which is the basis of the doctrine in question, by national law—by what is sometimes called the municipal law regulating the intercourse between foreign states or kingdoms. We are perfectly satisfied, that partial ordinances, the whims, caprice, and the will of the sovereign, or of the supreme power, regulate their decisions. How absurd, then, that decrees resting on such a foundation should be, *in all events*, and *to all purposes*, conclusive !

4. If our courts give conclusive effect to a foreign sentence as to collateral objects, it must be either, first, on the ground that foreign nations may demand it of us by virtue of treaties, or the general law of nations; or, secondly, the principle is *expedient ;* or, thirdly, we ought to accede to it as a matter of comity or courtesy. It will not be said, that any treaty binds our courts. It is not true, that this is consonant to national law. *Valin* and *Emerigon* clearly evince, that *France* does not admit it. That it is expedient, cannot be said, where the principle is seldom called into operation except in time of war ; and then it is perfectly clear, that it works immense mischief to neutrals. As to comity or courtesy, it is always " overstrained" where it protects fraud and falsehood.

5. It is urged, that by suffering the conclusiveness of this judgment to be impeached, in this case, its validity is questioned, and it is therefore no longer to be respected as a *judgment.* I answer, that our principles do not

June, 1810.

BROWN
v.
UNION
INSUR. Co.

open this judgment for examination so far as it operates *in rem.* Thus far it is, and ought to be, obligatory and conclusive. But to question again a fact which it professes to find, is not to impugn the decree in its essential parts.

6. Domestic precedents are next to be considered. In *Pennsylvania,* it is understood that the decision is in favour of the insurers. In *New-York,* after great deliberation, the highest court of law has decided, that a foreign sentence of a court of admiralty is *not* conclusive only so far as to bind the property thereby transferred. This question has also been discussed in the *supreme court* of the *United States,* and at last decided in favour of the conclusiveness. Chief Justice *Marshall* being interested in the question, and Judge *Todd* not having heard the argument, gave no opinion. *Cushing, Washington,* and *Johnson,* decided the case against *Chase* and *Livingston.* It is difficult to find a more *equal* division in the court under all circumstances. I am aware, that the reporter asserts, (4 *Cranch,* 443. n.) that *Marshall* joined in the judgment. This, however, is an error, as one of the court informed me. This being the state of domestic precedents, I contend that there is nothing in them, taken together, against the doctrine which I have endeavoured to support.

SWIFT, J. This is an action on a policy of insurance; and the only question is, whether the decree of a foreign court of admiralty condemning the cargo of the vessel as enemies' property, is conclusive evidence of the fact.

There is no controversy with regard to the rule established in *Great Britain.* It has been there decided, that the decrees of foreign courts of admiralty are conclusive evidence of the rights they establish, and the facts they find; and that where a ship or cargo is condemned for a breach of neutrality as being enemies' pro-

perty, or for any other breach, such sentence is conclu-
sive evidence of the fact on which it is founded, and
falsifies the warranty of neutrality.

It is conceded, that the decisions in *Great Britain* have
no binding authority on us: and, as the question
never has been decided in this court, it is open for ex-
amination on original principles; and it is in this point of
view that I shall consider the subject. I apprehend, our
acknowledgment of the authority of the *law of nations*,
and our adoption of the *marine law*, have established
principles decisive of this question.

The law of nations is a rule of conduct obligatory on
sovereign, independent states: and the right of capture
on the high seas by nations at war is clearly a part of
that law. The decrees of judicial tribunals proceeding
according to the law of nations must be conclusive, as
far as that law is recognised, for the same reason that
the judgments of courts proceeding according to munici-
pal law, are conclusive, as far as that law extends. In all
civilized states, courts are constituted that have jurisdic-
tion of questions of *prize*, and are to decide according to the
law of nations. In these cases, the proceedings are *in
rem;* and every person interested is supposed to be a
party to them. Whenever, then, a court of admiralty
in one country acting as a *prize court*, decides on the
question of prize, and condemns captured property, such
sentence or decree must be conclusive evidence, when
the same question shall arise in any other country re-
cognising the law of nations, on the same principle
that the judgment of a municipal court is conclusive be-
tween the same parties, and their representatives,
whenever the same question shall arise in another court
in the same country where the judgment was rendered.
As we have adopted the law of nations, we must take
it with all its consequences; and we can have no more
right to deny the conclusiveness of the sentence of a fo-
reign court of admiralty, acting as a prize court accord-

June, 1810.

BROWN
v.
UNION
INSUR. CO.

ing to the law of nations, when the same question arises before us, than we have to deny the conclusiveness of the judgment of a court in this state, when the same question arises between the same parties in another court; or than we have to deny any other principle of the law of nations. I should therefore deem the decree of the court of admiralty to be conclusive in this case, not on the authority of the decisions in *Great Britain*, but ont he authority of the law of nations, which is a part of the common law of the land. At the same time, it is not improper to observe, that the courts of *Westminster Hall* have uniformly paid such a sacred regard to principle in their decisions, that they may be deemed good evidence not only of national law, but of common law, and are entitled to the highest respect in all countries governed by the same general rules of jurisprudence.

With respect to the remark, that the doctrine of the conclusiveness of foreign decrees is of modern date, it is a sufficient answer, that this is immaterial, for if the question had now arisen for the first time, the same decision must have been given, on principles coeval with the law of nations.

The same consequences must result from our having adopted the law of merchants. As the commercial intercourse between different nations could not be regulated by municipal law, it became necessary to adopt, by general consent, certain rules as applicable to all nations. As the law of nations was introduced by the custom and usage of nations, so the marine law, or law of merchants, was introduced by the custom and usage of merchants. It may be traced to the earliest periods of the history of commerce, and is properly deemed a branch of public or universal law. Though the law of insurance is of comparatively modern date, yet it was introduced by commercial usage, and is deemed a branch of the law of merchants. In *England*, the law of merchants is recognised as part of the common law; but the principles of it have

June, 1810. not been derived from municipal regulations. Their
———————   courts have taken a wider range, and have selected from
BROWN     the usages of the commercial world their code of ma-
v.        ritime jurisprudence.
UNION
INSUR. Co.

As we are a commercial people, we have, with great
propriety, adopted the law of merchants common to all
commercial countries, and especially the law of insurance
as recognised in *Great Britain*. Having adopted the
law of insurance, of which the rule in question is a part,
it follows that we have adopted the rule itself: for, it
would lead to infinite confusion and difficulty, to admit
the idea, that after we have adopted a branch of juris-
prudence, the most important parts of it might be con-
tested. At this rate, every principle may be discussed,
and examined, and is to be settled anew. This would
deprive us of the advantage of a well known code, per-
fected by the wisdom of ages, and matured by the expe-
rience of nations.

It is true, that some foreign courts of admiralty pay
little or no regard to the law of nations in their deci-
sions. But this furnishes no reason why the rule should
be varied; for the parties may take that into considera-
tion in calculating the risk, and settling the premium of
insurance; or they may expressly provide against it
in the policy. It is well settled that the insured may
stipulate, that proof that the warranty of neutrality has
been complied with, may be made in the country where
the action is brought on the policy. As the parties can,
by their own act, provide against the effect of decrees
repugnant to the law of nations, there is no necessity for
departing from the established rule respecting their con-
clusiveness.

From these considerations I am of opinion, that the sen-
tence of the court of admiralty in this case was conclu-
sive evidence that the cargo insured was enemies' pro-
perty; and that a new trial ought to be granted.

TRUMBULL, J. The maritime code, adopted in the courts of admiralty, though a branch of the law of nations, is as much a part of the common law as those parts adopted from the feudal system. Courts of admiralty judge by the law of nations.

June, 1810.

HUNTING-TON
v.
OXFORD.

The record is the only evidence of the most material fact, *viz.* the condemnation, and is also conclusive as to all material facts it expressly finds true.

When the insured warrant the vessel *neutral property*, they take on *themselves* all risks that arise on the ground of want of neutrality; and the insurer is not holden to respond any loss by condemnation on that ground. The insured must make good his warranty in the admiralty court where the neutrality is questioned, or the warranty could have no effect.

Such condemnation is clearly not one of the casualties insured against by the policy.

MITCHELL, Ch. J. REEVE, EDMOND, N. SMITH, BALDWIN, and J. C. SMITH, Js. were of the same opinion.

BRAINERD, J. having been concerned as counsel in the case, gave no opinion.

New trial to be granted.