*Hartford,*
June, 1844.

## HOLCOMB, admr. of ADAMS, *against* PHELPS.

Holcomb
*v.*
Phelps.

| 16 | 127 |
|----|-----|
| 67 | 128 |

| 16 | 127 |
|----|-----|
| 76 | 621 |

The distribution of intestate personal property, is to be governed by the laws of that country where the deceased had his domicil, at the time of his death.

But the question who is clothed with authority to administer the assets of a deceased person, must be decided by the tribunal having jurisdiction of the subject, where such assets are situated.

The decision of a court of competent jurisdiction, is conclusive upon the parties, as to the title claimed under it, and as to the facts directly put in issue and determined; so that such title or facts cannot be again contested, between the same parties, in the same court, or any other. And where the court has a peculiar and exclusive jurisdiction, its decree is binding upon the judgment of any other court, in which the same subject comes immediately into controversy.

These principles are applicable to the sentences of foreign courts, and especially to the decisions in the several states of this Union, which, by the constitution, are to have the same effect in other states as in the state where they were made.

Where the deceased, though born and educated in this state, had, for a long time, made the city of *New-York* his place of business; had placed most of his property there; had there left the evidence of his debts; and there his debtors resided; the surrogate of the city of *New-York*, to whose jurisdiction the subject appertained, after a full hearing of the parties, granted administration to *A*, an inhabitant of this state, who took possession of the assets of the deceased, and removed them to his residence here; after which, *B*, one of the parties before the surrogate's court, took out administration on the same estate from the court of probate here, and then brought trover against *A*, for the chattels of the deceased in his hands; it was held, that the decree of the surrogate's court afforded *A* a complete protection, and consequently, the action was not sustainable.

THIS was an action of trover, for sundry articles of personal property, promissory notes and moneys, which the plaintiff claimed as administrator of *Richard Adams*, deceased.

The cause was tried at *Hartford, January* term 1844, before *Williams*, Ch. J.

*Richard Adams* was born and brought up in this state; but had long done business in the city of *New-York*, and as master of a vessel, had commenced his voyages, by sailing from that port. He died at *Hoboken*, in the state of *New-Jersey*, on the 2d of *July*, 1838, intestate, leaving neither widow nor issue, but a mother, one sister of the whole blood, who was wife of the plaintiff, and one brother and five sisters of the half blood; all or most of whom, at the time of his death, resided in this state. On the day of his death, he left his place

of residence in the city of *New-York*, and went to *Hoboken*, expecting to return immediately, but died there suddenly.

All the personal property, for which the plaintiff claimed any right to recover, was actually in the city of *New-York*, at the time of *Adams's* death, except such wearing apparel as he then had on his person. The notes and other evidences of debt were also there; and there too the debtors lived.

Shortly after the death of *Adams*, the defendant, who was his brother of the half blood, residing in *Windsor*, in this state, went to the city of *New-York*, and there took administration upon his estate, which was granted, by the surrogate's court of the city of *New-York*, having jurisdiction of the subject; gave bonds according to the laws of the state; made and returned an inventory, embracing the property in question; and then brought that property to *Windsor*. He afterwards proceeded to settle said estate, and completed the settlement thereof, according to the orders of said court and the laws of the state of *New-York*; and rendered an account of his administration to said court.

It was proved and admitted, that if *Adams* was domiciled in the city of *New-York*, at the time of his death, his mother, his sister of the whole blood, and his brother and sisters of the half blood, were each entitled to an equal share of his personal estate; but if he was domiciled in *Windsor*, in this state, his sister of the whole blood was his only heir at law. After a full hearing of the parties, the surrogate found, that *Adams* was, at the time of his death, domiciled in the city of *New-York*, and directed, that said estate should be distributed, according to the laws of the state of *New-York*, equally to the mother, the sister of the whole blood, and the brother and sisters of the half blood. The plaintiff and his wife received and accepted her distributive share, as did each of the other distributees.

On the 6th of *July*, 1841, the plaintiff took administration on the estate of *Adams*, in this state, granted by the court of probate for the district in which the town of *Windsor* is situated; gave a bond, as required by law, for the faithful execution of his trust; and procured an order limiting the time for the exhibition of claims. Shortly afterwards, the plaintiff made and returned to the court of probate, an inventory of some part of *Adams'* property sought to be recovered in this

suit; but no administration account was ever rendered by him; nor did it appear that any creditor had ever exhibited to him any claim against said estate, although the time limited for the exhibition of claims and the rendering of his administration account, had long since expired. Here his administration ended. Soon afterwards, and before any order of distribution was made, he demanded the property in question of the defendant, which he refused to deliver.

*Hartford,*
June, 1844.

Holcomb
*v.*
Phelps.

From the evidence before the court, the plaintiff claimed to have proved, that *Adams*, at the time of his death, was domiciled in *Windsor*, in this state; and the defendant, that he was domiciled in the city of *New-York*.

The defendant also claimed, as matter of law, that the proceedings before the surrogate in *New-York*, especially his finding and decree in respect to the domicil of *Adams* and the distribution of his property, were final and conclusive upon the parties; and that the plaintiff was precluded from denying the fact of domicil so found, or claiming that the distribution was not according to law; and consequently, that the defendant was not liable in this action.

The plaintiff, on the other hand, claimed, that neither the proceedings before the surrogate in *New-York*, nor the facts admitted and proved on the trial of this cause, furnished any ground of defence to the action.

The court instructed the jury, that the proceedings before the surrogate, and his finding and decree, were not conclusive against the plaintiff and his wife, or either of them, but that the enquiry was still open in this cause, where the domicil of *Adams*, at the time of his death, was; and that, as the plaintiff was now suing as administrator, those proceedings were not evidence against him in his representative capacity: that if the jury should find, that *Adams* was domiciled in the city of *New-York*, at the time of his decease, the plaintiff could not recover in this action, notwithstanding the defendant had removed the property into this state: that if they should find, that *Adams* was, at the time of his decease, domiciled in *Windsor*, and not in the city of *New-York*, the defendant was liable in this action, and it would be their duty to return a verdict accordingly; and the rule of damages would be the value of the property in the hands of the defendant in this state, at the time of the demand made.

*Hartford,*
June, 1844.

Holcomb
*v.*
Phelps.

The jury returned a verdict for the plaintiff, in accordance with the direction of the court ; and the defendant moved for a new trial for a misdirection.

*Hungerford* and *Chapman*, in support of the motion, contended, 1. That the judgment of the surrogate's court in *New-York*, was conclusive.   It is to be observed, in the first place, that the law in regard to the administration and distribution of intestate personal property, is a branch of international law.   2 *Kent's Com.* 345.   See also Lord *Thurlow's* remarks in *Bruce* v. *Bruce*, 2 *Bos. & Pul.* 230. n.   Secondly, the decision of a court of competent jurisdiction proceeding *in rem*, the property being within its jurisdiction, is final and conclusive.   *Rose* v. *Himely*, 4 *Cranch*, 241.   *Hudson* v. *Guestier*, 4 *Cranch*, 293.   *Williams* v. *Amory*, 7 *Cranch*, 429.   *Brown* v. *Union Ins. Co.* 4 *Day*, 179.   *Denison* v. *Hyde*, 6 *Conn. R.* 508, 9.   *Hall v. Williams*, 10 *Pick.* 241. *Fay* v. *Haven*, 3 *Metc.* 109.   Thirdly, the judgment in question is made conclusive, by the constitution of the *United States, art.* 4. *sec.* 1.   *Russell* v. *Briggs*, 9 *Mass. R* 462. *Hall* v. *Williams*, 6 *Pick.* 238.   *Thurber* v. *Blackbourn*, 1 *N. Hamp. R.* 242.

2. That conceding that the decision is not conclusive as to the distribution—or would not be, aside from the conduct of the present plaintiff,—yet his appearance in court, and his acceptance of the distributive share, rendered it so.   *Norton* v. *Cook*, 9 *Conn. R.* 321.   *Clay* v. *Smith*, 3 *Pet. R.* 411.   *Van Hook* v. *Whitlock*, 26 *Wend.* 54.

3. That the defendant was not liable to be sued here for the property in his possession, in an action at law.   *Currie,* admr. of *Newby* v. *Bircham* & al., exrs. of *Moore*, 1 *Dowl. & Ry.* 35.   (16 *E. C. L.* 15.)   *Sto. Conf. L. sec.* 514. *a.* 514. *b.*—also *p.* 432. n.   *Select-men of Boston* v. *Boylston*, 2 *Mass. R.* 384.   *Goodwin* v. *Jones*, 3 *Mass. R.* 514.   *Davis* v. *Estey*, 8 *Pick.* 475.   *Dawes* v. *Head*, 3 *Pick.* 128   *Doolittle* v. *Lewis*, 7 *Johns. Ch. R.* 45. 47.

*Toucey* and *T. C. Perkins*, contra, remarked, that *Holcomb*, the present plaintiff, being administrator, by the laws of this state, had, of course, *prima facie* right to the property of the deceased, which he found here.   They then contended,

*Hartford,*
June, 1844.
———
Holcomb
*v.*
Phelps.

1. That the deceased being domiciled here, as the jury have found, the plaintiff's right superseded that of the *New-York* administrator.

2. That the surrogate's proceedings were inadmissible, on the trial, as evidence of the domicil of the deceased.   1 *Stark. Ev.* 191.   *Deneale* v. *Stump's* exrs. 8 *Pet. R.* 328. 340. *Aldrich* v. *Kinney,* 4 *Conn. R.* 380. 382. & seq.   *Osgood* v. *Manhattan Company,* 3 *Cowen,* 612.   *Borden* v. *Fitch,* 15 *Johns. R.* 121. 141.

3. That if those proceedings were admissible in evidence, they were no bar to proceedings in our courts.   They could not preclude our courts from acting on the question, by anticipating the action of our courts.   The question of jurisdiction is always open.   *Elliott* v. *Peirsol,* 1 *Pet. R.* 328. 340. *Aldrich* v. *Kinney,* 4 *Conn. R.* 382.   *Hall* v. *Williams,* 6 *Pick.* 232. 243.   *Campbell* v. *Tousey,* 7 *Cowen,* 64.   *Glenn* v. *Smith,* 2 *Gill & Johns.* 493.

4. That the plaintiff's appearance in the surrogate's court to contest the legality of its proceedings, and his subsequent acceptance of a distributive share, constituted no waiver of his rights.   *Martin* v. *Fales,* 6 *Shep. R.* 23.

WILLIAMS, Ch. J.   The great question before the jury was, where was the domicil of *Adams?*   Was it in *Windsor, Connecticut,* or in the city of *New-York?*   And it seems to have been assumed, that the rights of the plaintiff must depend upon the decision of that question.

Before making a particular examination of that question, it may be well to notice some general principles, which may have an influence in the result in this case, though they were not disputed.   The decision of a court of competent jurisdiction is final and conclusive upon the parties, and as to the title claimed under it.   *Rose* v. *Himely,* 4 *Cranch,* 241.   *Gelston* v. *Hoyt,* 3 *Wheat.* 315.   And a fact which has been directly tried and determined, by a court of competent jurisdiction, cannot be again contested between the same parties, in the same court or any other.   *Hopkins* v. *Lee,* 6 *Wheat.* 113. *Elliott* v. *Peirsol,* 1 *Pet. R.* 34.   If a decree thereon is in legal form, it is complete evidence of its own validity.   *Spratt* v. *Spratt,* 4 *Pet. R.* 408.   And where the court has a peculiar and exclusive jurisdiction, its decree is binding upon the

*Hartford,*
*June, 1844.*

Holcomb
*v.*
Phelps.

judgment of any other court, in which the same subject comes immediately into controversy.

It is familiarly known, in its application to the sentences of ecclesiastical courts, in the probate of wills and granting of administration. *Allen* v. *Dundas*, 3 *Term R.* 125. *Gelston* v. *Hoyt*, 3 *Wheat.* 315. *Rockwell* v. *Sheldon*, 2 *Day*, 312. And this is equally applicable to the sentences of foreign courts as our own; and when they act upon the property, those decrees are binding everywhere. *Rose* v. *Himely*, 4 *Cranch*, 241. *Williams* v. *Armroyd*, 7 *Cranch*, 423. *Brown* v. *Union Ins. Co.*, 4 *Day*, 179. And more particularly is this applicable to the decisions in the several states of this Union, which, by the constitution, are to have the same effect in other states as in the state where they were made, and are entitled to full faith and credit. *Mills* v. *Duryee*, 7 *Cranch*, 481. *Starbuck* v. *Murray*, 5 *Wend.* 148. But to entitle the judgments or decrees of a court to such respect, that court must be acting within the sphere of its authority; for if it acts without authority, its orders or decrees are regarded as nullities. *Elliott* v. *Peirsol*, 1 *Pet. R.* 35. *Thompson* v. *Tolmie*, 2 *Pet. R.* 163. For the operation of any judgment must depend upon the power of the court to render that judgment, or whether they had jurisdiction. It must follow, of course, when such a judgment is brought forward as a ground of recovery, or as a defence, the court who are called to act upon it, must enquire whether the court rendering it had jurisdiction or not. *Rose* v. *Himely*, 4 *Cranch*, 241. *Slocum* v. *Wheeler*, 1 *Conn. R.* 449. 451.

As then it is not denied, that the surrogate's court in *New-York*, made the decree upon which the defendant relies, the question is presented, does it afford him a complete protection?

That this court was a court of record, was not denied. But it was claimed by the plaintiff, that the real question was, who should inherit this property, and what should be the law of succession—the law of *New-York*, or the law of *Connecticut;* and this, they said, must depend upon the domicil of the deceased; and as the jury had found the domicil of *Adams* to be in *Connecticut*, therefore, the law of *Connecticut* must govern.

It certainly is now a settled principle of international law,

that personal property shall be subject to that law which governs the person of the owner; and that the disposition, distribution of, and succession to personal property, wherever situated, is to be governed by the laws of that country where the owner or intestate had his domicil, at the time of his death. *Somerville* v. *Lord Somerville,* 5 *Ves. Jr.* 786.    *Sill* v. *Worswick,* 1 *H. Bla.* 690.    *Desesbats* v. *Berquier,* 1 *Binn.* 344. *Dawes* v. *Head,* 3 *Pick.* 128. 144.    And it would seem to follow, that if this court can legally ascertain the fact that *Adams's* domicil is in this state, they will distribute the property that is subject to their disposal according to the law of his domicil.    So far as it regards the property in this state in the hands of the plaintiff, therefore, there can be no doubt. But the question is as to the personal property left in the state of *New-York,* and distributed under the order of their courts. Can this court enquire whether it has been properly done, or done in the same manner as we should do it ?    And to determine that question, we are to look not merely at the place of domicil of the deceased ;—that fact may, in our opinion, be one way ;—but if a court competent to settle it has decided otherwise, we may be precluded from examining the question.

We are then to enquire, whether that question has been decided, by a court having competent jurisdiction ; and if it has, whether we can in any way attack that judgment.

That the surrogate's court in *New-York* has authority to grant letters of administration, and distribute estates in a manner similar to our courts of probate, and to the ecclesiastical courts in *Great-Britain,* has not been denied.    The statutes of the state expressly give that power.    2 *Rev. Stat.* 95. *sec.* 71. and 220. *sec.* 1.    And that the decrees of this court, while unannulled, and unappealed from, are final, so that an action of debt will lie upon them, has been decided, by the supreme court of *New-York.    Dubois* v. *Dubois,* 6 *Cowen,* 494.

The remaining question, then, is, whether the surrogate's court in *New-York* had jurisdiction in this case.

It is said, the intestate was domiciled here, and administration was taken out here ; and shall the administrator in *New-York* prevail, because he was first in the race?    Certainly, that can be no good reason.    This, it is said, is the principal administration, because the domicil of the deceased was here.    But the court in *New-York* has made a similar de-

*Hartford,*
June, 1844.

Holcomb
*v.*
Phelps.

cision—that the deceased was domiciliated in that state. It was said, however, he may be domiciliated in both states ; and if this is so, it is apparent that other considerations must be regarded, when we are settling the question of jurisdiction ; and the defendant claims, that the place where the goods were situated, at the time of the death of the intestate, must regulate the jurisdiction.

The answer is, that personal property has no *situs,* but follows the person of the owner ;—and that this court has holden as to debts generally, that there is no colour for the idea that they are impliedly located in the state where the debtor resides ; but, on the contrary, they are now universally treated as having no *situs* or locality. *Atwood* v. *Prot. Ins. Co.* 14 *Conn. R.* 502. The broad language made use of above, seems to sanction, in some measure, the position taken below. But it no doubt was intended rather as a general rule than as one applicable to every case. And we are satisfied, upon a review of the authorities, that the above position cannot extend to the case before us.

It is apparent, that the goods of a person who dies intestate, must necessarily be subject to be disposed of, under such regulations as the sovereign authority of the country shall judge reasonable and proper. Accordingly, it has been holden, by some of the nations of *Europe,* that all the goods of a stranger dying in their country, become the property of the king. And in the country from which we derived our laws, anciently whenever a person died intestate, the king, as the *parens patriæ,* and general trustee of the kingdom, took possession of his effects. It was indeed done ostensibly to secure a proper disposition of the property ; but it was under the regulation of the sovereign power. 9 *Co.* 38. After a time, this power was granted to the ordinary or bishop, who disposed of the goods received under it, as was claimed, for pious uses, until the ecclesiastical courts were compelled to appoint administrators ; and finally, a law was passed, compelling and regulating distributions of the property among the relatives of the deceased. *Plowd. C.* 277. The sovereign power of the country, therefore, gives to property so located a *situs,* from which it cannot escape. And this power, if used with discretion, is a salutary power, and ought not to be complained of. The property of individuals in a foreign country, is under the

care and guardianship of the laws of that country. The owners frequently acquire credit upon the strength of such property ; and it would seem to be just that the sovereign power which guarded it, should direct that it should be fairly applied, and not suffer it to be withdrawn, by persons over whom they can have no controul.

A respectable Judge in another state has remarked, that the goods of an individual, in their totality, ought to be considered as the goods of the nation, in regard to other states. They in some sort really belong to it, from the rights it has over its own citizens, because they make a part of the sum total of its riches, and augment its power. *Yeates*, J. 1 *Binn.* 347. Accordingly, it seems to be the common law of every country and of every state, that if one claims the goods of a deceased person, he must do it under such regulations, and subject to such disposition, as the laws of that state have imposed.

It is therefore now well understood, that an executor or administrator, by virtue of his appointment in one state or country, derives no authority to seize the goods of the deceased, or to bring actions for his debts, in another country or state, unless he obtain new powers and give new security in the state or country where such goods are, or such debtors reside. *Riley* v. *Riley*, 3 *Day* 74. *Sto. Conf. L.* 423. n. 2. (2nd ed.) where numerous authorities are cited.

In *England,* it seems that formerly there was no way in which debts due to a deceased intestate could he collected at all ; and this was remedied, by the stat. of 31 *Edward* 3. *ch.* 11.; and the ordinaries were authorized to appoint administrators for this purpose. *Plowd. C.* 277. Of course, no persons but such as were so appointed, could bring suit to collect such debts. And now, debts due from the citizens of one state, if they are to be collected there, can only be collected according to the laws of that state ; for in all cases of this character the *lex fori* must govern. 14 *Conn. R.* 589. It seems too, that the debts of deceased persons are now subject to the same general laws as goods of the same persons ; and that to prevent conflicting jurisdiction with respect to *choses in action* and titles to property, it is now established as law, that judgment debts are assets where the judgments are recorded ;—leases, where the land lies ; specialty debts, where

*Hartford,*
*June, 1844.*

Holcomb
*v.*
Phelps.

the instrument happened to be ; simple contract debts, where the debtor resides, at the time of the death of the testator. Per Ld. *Abinger,* as cited by Justice *Story,* note, *p.* 425. The question is not, says Judge *Story,* whether such goods are assets, but who is clothed with authority to administer them ; and this must be decided by the local jurisdictions where they are situated. *Conf. of Laws,* 426. *sec.* 513.

We have, then, before us, a case where the deceased had, for a long time, made *New-York* his place of business, and placed most of his property there ; and left the evidence of his debts there, and his debtors residing there ; in a state where it has been often decided, that their courts could take no notice of letters of administration granted abroad, out of the state. *Morrell* v. *Dickey,* 1 *Johns. Ch. R.* 153. *Doolittle* v. *Lewis,* 7 *Johns. Ch. R.* 45. And now, were we to say, that the courts in *New-York* have no jurisdiction over this subject, we leave this property subject to all the mischiefs so feelingly described, by ancient authors, before the statute of *Edward* 3.: " For by this means, the debtors would keep in their own hands the money which they owed the intestate, and thereby the persons to whom the intestate was indebted, could not have remedy for the debts due them from the intestate." *Plowd. C.* 277.

But an appeal has been made to state pride and state sovereignty ; and it is said, if we cannot regulate the disposition of the property of our own citizens, we are a conquered people. It should be remembered, that in this case, we yield no more to *New-York* than we ask and expect from her, in a similar case, and what, upon well established principles of international law, we have a right to demand.

It is like the common case of a citizen of one state or country being compelled, by circumstances, to resort to the courts of another state or country for justice against his debtor or wrong-doer, and finding himself worsted. He cannot come back to his own state courts, and appeal to their sense of justice and their sovereignty, to see him righted.

But it is said, that the authorities of our sister states will justify the claims made by the plaintiff ; and the case of *Glenn* v. *Smith,* 2 *Gill & Johns.* 493. is cited. That was an action of trover for goods of *Wm. Haslett,* by an administrator. One ground of defence was, that he sold the goods under letters

of administration obtained in *Delaware ;* and the court do say, that they take no notice of administration granted in another state ; that they are as blank paper, and cannot legalize acts otherwise tortious. But when we go a little further, we find the same judge adding, that for aught that appears, he did not take possession of and sell the property, under any supposed authority derived from the *Delaware* letters of administration ; on the contrary, the proof, as set out upon the record, is, that he took possession of the property, and sold it, as the executor of *Ann Haslett*, which he could not do, under letters of administration upon the estate of *William Haslett ;* (*p.* 506, 7.) we are brought to the conclusion, that the case was not decided upon the first ground. At all events, a decision of that point was not necessary for the decision of the case. We presume, therefore, the courts of *Maryland* would not consider the opinion as obligatory even there.

The case of *Campbell* v. *Tousey*, exr. of *Booth*, 7 *Cowen* 64. was also relied on, by the plaintiff. There, the plaintiff having a debt against *Booth's* estate, sued *Tousey* as executor *de son tort*, and proved he had assets in his hands in *New-York*, brought from *Pennsylvania*. The defendant proved he was duly appointed executor of *Booth*, and found the will in that state, where the deceased lived. He also had received debts due to *Booth* in the state of *New-York ;* and he was held liable for all the assets brought into the state of *New-York*, which had not been applied in a due course of administration. The doctrine of this case, and similar decisions in *Pennsylvania*, is attacked, by Judge *Story*, who says, there is very great difficulty in supporting these decisions, to the extent of making the foreign executor or administrator liable here for assets received by him abroad, in his representative character, and brought here by him. It will be found exceedingly difficult to cite any authority at the common law, in support of such a doctrine. *P.* 428. *sec.* 514. On the other hand, says this learned commentator, there are other *American* authorities, which indicate a very different doctrine. The modern *English* authorities are to the same effect. They fully establish the doctrine, that if a foreign executor or administrator brings or transmits property here, which he has received under the administration abroad, or if he is personally present, he is not either personally, or in his representa-

*Hartford,*
June, 1844.

Holcomb
*v.*
Phelps.

tive capacity, liable to a suit here ; nor is such property liable here to creditors, but they must resort for satisfaction to the forum of the original administration. *Sec.* 514. In *McNamara* v. *Dwyer,* the chancellor of *New-York,* while he does not entirely accede to the above reasoning of Judge *Story,* doubts the authority of *Campbell* v. *Tousey,* so far as it permits suits at law ; though he holds, as seems to have been also holden by Judge *Washington,* (*Byron* v. *McGee,* 2 *Wash. C. C. R.* 337.) that a suit may be sustained in chancery. But in that case, the learned chancellor also held, that in such a suit respect must be had to the nature and extent of his liability according to the laws of the state or country from which he derived his authority to administer the assets of the decedent, so far at least as respects that part of such assets as were within the jurisdiction of the state or country from which he derived such authority. 7 *Paige,* 239, 242.

If these principles are admitted, it is clear, that no action of trover will lie ; or if it would, that the defendant could not be liable, if he fairly discharged his trust agreeably to the law of the state or country from which he received it. And this principle, so reasonable in itself, and so conformable to the principles of justice, and so necessary for the security of individuals, we recognize as our law ; and feel bound, therefore, to say, that this defendant ought to be protected, when he has but pursued the orders and decrees of the court from which his authority emanated.

It is not necessary to consider other objections, which were made by the defendant, as the opinion given disposes of the case.

We advise that a new trial be granted.

In this opinion the other Judges concurred.

*New trial to be granted.*