By the Court, Jones, J.
In addition to' the objection to the introduction of the record of the surrogate on the trial, various other points were raised which are properly presented for the determination of the general term, and will appear in the course of this opinion, but the objections to the introduction of the records from the surrogate’s office will be first disposed of.
Although the statute neither requires the presentation of a petition to a surrogate, nor that the surrogate shall take proof of or ascertain in what county the testator died, yet there can be no doubt that he has power to ascertain whether the facts upon which his jurisdiction rests, exist or not; and if he requires such facts to be shown by a verified petition as a foundation for the issuance of a citation, the petition becomes a part of the record, and the statement of jurisdictional matters therein, is a statement of such matters in, and on the face of, the record, and is prima facie evidence of their existence, although not conclusive, as will hereafter appear. The objection, then, that the record did not show jurisdiction of the subject matter, although, perhaps good when taken, yet was cured when the petition was read in evidence. As the record shows jurisdiction of the subject matter on its face, it was unnecessary to prove the facts conferring it, aliunde; the second objection was, therefore, not good. The third objection, to wit, that the record showed . on its face, want of jurisdiction over the persons of the plaintiffs, because there was no proof of the service of a citation on their special guardian, was untenable, since the record *191 shows that the special guardian appeared on the taking proof of the execution of the will.
There is no statutory provision requiring the jurisdiction of a surrogate, who has admitted a will to probate to be proved aliunde before his record can be read in evidence. The judgment of the surrogate’s court, admitting a will to probate, is the authority for its record under the statute. If, then, the record of the judgment shows jurisdiction on its face, the authority for making the record of the will is established prima facie, and under the provisions of the statute it becomes admissible in evidence. As such jurisdiction was shown on the face of the record, in this case, the fourth objection was properly overruled.
It is not shown in’ what respect the proof before the surrogate was insufficient to entitle the will to be admitted to probate. Upon a close scrutiny of the proofs adduced, we are unable to discover any insufficiency; the last objection is, consequently, not sustainable.
With reference to the objections to the reception in evidence of the petition, as has been before remarked, there is no provision of the statute requiring a petition. The statute provides that the executor, devisee, or legatee named in any will, or any person interested in the estate, may have such will proved before the proper surrogate, and then that “ on application to the surrogate he shall ascertain, by satisfactory evidence, the following factsthe facts so to be ascertained are simply the names and residences of the persons who are to be notified to attend the probate. (Laws of 1837, p. 524.) A proceeding before a court or a magistrate sitting in a judicial capacity must always be initiated by some proceeding on behalf of a party in interest. If there is no mode in which the proceeding is to be initiated pointed out by statute^ the court or magistrate must prescribe such mode. The statute under consideration does not prescribe how the application is to be made; therefore, immediately after its passage, the ordinary mode used for setting a court in motion, when neither an action at law or a suit in equity; *192 was commenced, was adopted, viz. by petition verified before a proper officer. Such petition becomes the foundation of the whole proceeding, the same as a petition to the Court of Chancery for the exercise of any part of its jurisdiction, not required to be invoked by bill; as the bill in an equity suit, as the declaration in an action at law (commenced by declaration.) As such petition, bill and declaration form a part of the record, so also does the petition to the surrogate; thus, then, the statement of jurisdictional facts in the petition to the surrogate became a recital of their existence on the face of the record, the same as in the ease of a petition to' a Court of Chancery, bill in equity, or declaration at law; being such a recital, they are prima facie evidence in support of jurisdiction, whenever that is attacked collaterally. This is the effect given by law to such a recital in the event of such attack.
A point was made as to the verification of the petition not being before the surrogate, but before a commissioner of deeds. A commissioner of deeds is an officer authorized to administer oaths in all cases where no special provision-is made by law. There being no special provision requiring petitions of the character of the one in question to be sworn to before the surrogate or by officers other than a commissioner of deeds, it was properly verified before such commissioner.
To prevent misapprehension, it will be well distinctly to state that it is not intended to hold that the presentation of a petition containing proper allegations of itself gives the surrogate jurisdiction, but simply that the statements in such petition are prima facie evidence of jurisdictional facts, when the jurisdiction of the surrogate is attacked collaterally.
Having disposed of these objections, we will-now proceed to the more important points raised on the argument. The first point raised is that the plaintiffs having clearly shown that the decedent at the time of his death, and immediately prior thereto, was an inhabitant of Columbia county, the surrogate of New York county had no jurisdiction to *193 admit Ms will to probate, although he died seized of real estate, situate in the county of New York. That point is well taken. Section 1 of chapter 430 of the laws of 1837, enacts that the surrogate of each county shall have jurisdiction, exclusive of every other surrogate (within the county for which he may be appointed) to take the proof of the last wills and testaments of all deceased persons in four cases, three of which provide for the nomresidence of the decedent in the state. They are as follows:
1st. Where, the testator, at or immediately previous to his death, should be an inhabitant of the county of such surrogate, in whatever place such death might happen.
2d. Where the testator, not being an inhabitant of this state, should die in the county of such surrogate, leaving assets therein.
3d. Where the testator, not being an inhabitant of this state, should die out of the state, leaving assets therein.
4th. Where a testator, not being an inhabitant of this state, should die out of the state, not leaving assets therein, but assets of such testator should thereafter come into the county of such surrogate.
5th. Where no surrogate has gained jurisdiction under either of the preceding clauses, and any real, estate devised by the testator should be situate in the county of such surrogate.
Were it not for the use of the word “ gained ” in the fifth of such clauses, the surrogate of Columbia would unquestionably have had exclusive jurisdiction to take the proof of the will in question; it is, however, insisted that by force of that word, any surrogate, in whose county real estate devised by a will is situate, by issuing the necessary citations, ousts all other surrogates of any jurisdiction, so far as proof of such will is concerned, which they otherwise might have had under any of the preceding clauses. The argument is that the phrase “gained jurisdiction,” means, and is to be read, as if it were “ obtained jurisdiction by proceedings having been taken before him to prove the will of the testator.” *194 It is obvious that the jurisdiction of each surrogate over the proof of wills is limited to those cases in which it is given to him by this section. Thus, if a testator, in whose will there is no devise of real estate, he not being an inhabitant of the state, dies out of the state, leaving assets in the county of Ulster alone, there can be no question but that the surrogate of Ulster has exclusive jurisdiction under the third enumerating clause. It necessarily follows that the jurisdiction of any particular surrogate depends on the concurrence of those events, on whose concurrence the statute gives him jurisdiction. Before their happening and such concurrence he has no jurisdiction whatever. Upon such happening and concurrence he immediately gains jurisdiction, and cannot thereafter be divested of it. I employ the word “gain,” for where the jurisdiction depends on the taking place of some event, then on such event occurring, a jurisdiction which did not before exist may be said to be obtained, got, acquired or gained; those words used in this connection are synonymous.
In this view the meaning of the word “gained,” in the fifth clause, is clear and unambiguous. It refers to surrogates getting jurisdiction over the subject matter of the proof of a particular will, by the happening and concurrence of some of the events mentioned in the preceding clauses. There is, therefore, no necessity for the. purpose of clearing up any ambiguity, to interpolate in the fifth clause after the word jurisdiction, the words “ by the issuing of proper citations.” The interpolation of those words, which are generally used in speaking of obtaining jurisdiction over the person, would be apt to defeat the intent of the statute, by making the jurisdiction given by the fifth clause depend on the omission of any other surrogate to obtain jurisdiction, over the persons of those who are to be cited, instead of over the subject matter. The effect of such interpolation, too, would be to require one of a like kind in each of the other clauses, so that the statute, instead of giving by them to the various surrogates exclusive jurisdic *195 tion in the specified cases, would provide that no surrogate should have exclusive jurisdiction when the will should devise real estate, unless he should be the first surrogate before whom proceedings to prove the will should have been taken. As before observed, there is no such uncertainty in the intent of the legislature, created by the use of the word “gain” nor is there any such obscurity or ambiguity in the language employed to convey such intent, as to justify such extensive interpolations.
The term “gaining jurisdiction ” has been applied to cases where two courts have concurrent jurisdiction over the subject matter of the cause or proceeding; when so applied it means “ gaining jurisdiction ” by proceedings had in one of the courts. In this class of cases, it sometimes occurs that a question arises, as to which court shall take and retain jurisdiction over the particular cause or proceeding. It is of course, necessary to adopt some rule on the subject in such eases, which is, that the court in which proceedings are first taken, takes and retains jurisdiction to the exclusion of the other. Therefore, in discussing the question, as to which of such two courts has gained jurisdiction to the exclusion of the other, the expression “ gained jurisdiction ” means, “ by proceedings first taken,” since that is the only way in which such jurisdiction can be obtained. But different surrogates have not concurrent jurisdiction over all the cases mentioned in the fifth clause. The term “gains jurisdiction,” used in the fifth clause, therefore, does not of necessity, (as is the case in questions arising between concurrent jurisdictions,) mean by proceedings being first taken before another surrogate; but its meaning must be such as the whole context of the section in which it is used calls for and what that is we have already discussed. Many cases may arise under the statute to which the doctrine as to gaining jurisdiction that obtains in the case of courts of concurrent jurisdiction may be applicable; thus, under the third clause, the testator might leave assets in every county; in which case every surrogate would have *196 concurrent jurisdiction over the subject matter. The same, result might occur under the fourth, and also under the fifth clause. Ho provision is made for these cases of concurrent jurisdiction by the act of 1837, but it is highly probable that, when such a case arises, the above mentioned rule, relative to the gaining of' jurisdiction by one of two of concurrent jurisdiction over the same subject matter, will be held to be applicable, there being nothing in the statute to prevent such application in such a case. Cases of concurrent jurisdiction, arising under the statute relative to the granting of letters of administration, are provided for by the Revised Statutes. Section 23, article 2, title 2, chapter 6, part .2, of the Revised Statutes defines the jurisdiction of a surrogate in granting letters of administration. That section has four clauses, which correspond precisely with the first four clauses in section 1, of the act of 1837, except that the word “ intestate ” is used instead of “testator,” and also with the exception that, at the end of the third clause in that section of the Revised Statutes, the words “ and in no other county,” are added. That section of the Revised Statutes does not provide for cases where an intestate, not being an inhabitant of the state, dies out of the state, leaving assets in several counties, and under the fourth clause of that section, cases of concurrent jurisdiction might arise. To provide for cases not provided for in that section, and also for such cases of concurrent jurisdiction as might arise under the 4th clause, two other section's, (24 and 25,) were introduced in such second article. The effect of those sections, so far as they bear on cases of concurrent jurisdiction, is to give to the surrogate who shall first grant letters of administration sole and exclusive jurisdiction. This is but putting in statutory form a principle which has been established by judicial decisions as applicable to cases of concurrent jurisdiction. It is urged, however, that the act of 1837, and sections 24 and 25 of such second article are statutes in pari materia, and should be construed together; and being so construed, *197 the provisions of these sections indicate the meaning to be attached to the words “ gained jurisdiction,” in clause 5, section 1, of the act of 1837. The argument is, that the legislature having by sections 24 and 25 declared in what manner a surrogate shall obtain jurisdiction of the subject matter, when they thereafter use the terms “gain jurisdiction ” they mean in the manner before pointed out. There might be much force in this argument, if the legislature had by those sections, (24 and 25,) undertaken to give a general definition of the phrase “gained jurisdiction,” or enacted that in all cases of intestacy, the surrogate who first granted letters of administration should be deemed to have acquired sole and exclusive jurisdiction; but these sections neither give such general definition, nor make such enactment. The enactment refers to but one class of cases, viz: those of concurrent jurisdiction in two or more surrogates. This concurrence of jurisdiction must'first exist, before the enactment can take effect. By no rule of construction can a statute which is designed to meet cases of concurrent jurisdiction after they have arisen, be so expounded as to operate in the first instance to create such concurrence; yet this is the only way in which those sections can be applied to the act of 1837, so as to benefit the plaintiff. For this purpose, it must first be held that they operate so to give concurrent jurisdiction to two or more surrogates, and then that they provide a means b.y which one of those surrogates can oust the other of such concurrent jurisdiction. As those sections in the Revised Statutes, where they were first enacted, were not intended to, and do not have, the effect of creating a concurrent jurisdiction, it is difficult to see how, by any rule of construction, or process of reasoning, such effect can be given to ’ them, when transplanted into a statute of a later date.
Upon this branch of the case, therefore, I have come to the conclusion, that the testator, having been at the time of, and immediately prior to his death, an inhabitant of Columbia county, the surrogate of New York county, was *198 not by the statute Invested with jurisdiction to admit the will to probate.
The next question is, can the decree of the surrogate of Hew York county be questioned for "the want of such jurisdiction ?
It is now conceded, (at least in this state,) that want of jurisdiction will render void the judgment of any court, whether it be of superior or inferior, of general, limited, or local jurisdiction, or of record or not; and that the bare recital of jurisdictional facts in the record of a judgment of any court, whether superior or inferior, of general or limited jurisdiction, is not conclusive, but only prima fade evidence of the truth of the fact recited, and the party against whom a judgment is offered, is not by the bare fact of such recitals, estopped from showing by affirmative proof that they were untrue,- and thus render the judgment void for want of jurisdiction.
Judge Marcy, said, (Starbuck v. Murray, 5 Wend. 158,) “ Unless a court has jurisdiction, it can never make a record, which imports uncontrolable verity to the party over whom it has usurped jurisdiction, and he ought not therefore to be estopped by any allegations in that record, from proving any fact that goes to establish the truth of a plea alleging a want of jurisdiction.” Chancellor Walworth laid down the principle in Davis v. Packard, (6 Wend. 332,) that “.If the jurisdiction of the court is general or unlimited "both as to parties and subject matter, it will be presumed to have had jurisdiction of the cause, unless it appears affirmatively from the record or by the showing of the party, denying the jurisdiction of the court, that some special circumstances existed to oust the court of its jurisdiction in that particular case.” Judge Bronson declared in The People v. Cassels, (5 Hill, 165;) “ Ho court or officer ■ can acquire jurisdiction by the mere assertion of it, or by falsely alleging the existence of facts on which jurisdiction depends.” And again in Bloom v. Burdick, (1 Hill, 139,) it is said, “ It is a cardinal principle in the administration of *199 justice that no man can be condemned, or divested of his rights, until he has had the opportunity of being heard. He must in some way be brought into court, and if judgment is rendered against him before that is done, the proceeding will be as utterly void as though the court had undertaken to act, when the subject matter was not within its cognizance. The distinction between superior and inferior courts is not of much importance in this particular case, for whenever it appears that there was a want of jurisdiction, the judgment will be void in whatever court it was rendered.” Judge Paige held in Hard v. Shipman, (6 Barb. 623, 624,) that “ The want of jurisdiction may always be set up against a judgment of á court, whether of general or of special and limited jurisdiction, whenever such judgment is sought to be enforced, or any benefit is claimed under it. To give any binding effect to a judgment, it is essential that the court should have jurisdiction both of the person and of the subject matter. If a court, whether of general or limited jurisdiction, undertakes to hold cognizance of a cause without having jurisdiction both of the person and subject matter, the proceedings are utterly void. The jurisdiction of a court, whether of general or limited jurisdiction, may be inquired into, although the record of the judgment states facts giving it jurisdiction. The record is never conclusive as to a recital or the statement of a jurisdictional fact; and the defendant is always at liberty to show a want of jurisdiction, although the record avers the contrary. No court or officer can acquire jurisdiction by the mere assertion of it, or by falsely alleging the existence of facts on which jurisdiction depends. If the court had no jurisdiction, it had no power to make a record; and the supposed record is not in truth a record. If not a record, it can not import absolute verity.” Similar remarks as-to the effect of a record, are to be found in 5 Wend. (158.) < .
< Judge Buggies, in the Chemung Canal Bank v. Judson, (8 N. Y. Rep. 259,) quoted with approbation the following *200 remarks in Elliott v. Piersoll, (1 Peters, 328, 340 :) “ The rule is well declared that when a court * * * acts without authority, its judgment and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought (even prior to a reversal) in opposition to them. * •* * This proves that the jurisdiction of any court exercising authority over a subject, may be inquired into in every other court, when the proceedings of the former are relied on, and brought before the latter by the party claiming the benefit of such proceedings and then added: “ The power of this court, therefore, to inquire into the jurisdiction of the District Court of the Hnited States is undoubted, and the power of that court to inquire into the jurisdiction of this, is equally clear.”
Judge Allen stated in Dobson v. Pearce, (12 N. Y. Rep. 164,) that “ The jurisdiction of the court in which a judgment has been recovered is, however, always open to inquiry, and if it has exceeded its jurisdiction, or has not acquired jurisdiction of the parties by the due service of process, or by a voluntary appearance, the proceedings are coram non judice, and the judgment void. The want of jurisdiction has always been held to be a valid defense to an action upon the judgment, and a good answer to it when set up for any purpose •” and Judge Denio held in Hatcher v. Rocheleau, (18 N. Y. Rep. 92,) that although in a court of general jurisdiction, it was unnecessary to prove that the defendant was served with process, or appeared in court, yet the defendant was at liberty to controvert those facts.
Thus, we see that Chancellor Walworth and Judges Bronson, Paige, Buggies, Allen and Denio, all. concurred in the view, that the judgment of every court will be void for want of jurisdiction, and that the recitals of jurisdictional matters, in the record of the judgment of any court, do not,' of themselves, preclude the showing by affirmative proof dehors the record that the recitals are untrue. I do not understand this doctrine to be denied by any court in any state of the Hnion, or by any of the Hnited States courts, *201 or by any English court. It is certainly not denied by any decision of the courts of this state. If any case can be found which appears to controvert it, it must either be explicable on a theory consistent with such doctrine or be considered as unsound, at least in this state. It rests on sound principles, and having been so often reiterated by many of the most distinguished judges of this state, must be taken to be its established law.
One ease seems to intimate some different doctrine. (Sheldon v. Wright, 5 N. Y. Rep. 516.) The learned judge who delivered the opinion of the court in that case, says, referring to cases cited from 15 John. 141; 19 id. 33; and 9 Cowen, 229, that the distinguished judges, in their remarks ■in these cases, “ doubtless intended only to say, that the want of jurisdiction might always be set up against a judgment when it appears on the record, or was presented in any other unexceptionable manner.” What meaning he attached to the phrase, “ any other unexceptionable manner ”is not very clear. If he meant simply that, as a rule of evidence, the want of jurisdiction should be proved clearly and without a reasonable doubt, no exception can be taken to the phrase. The remark was made (on page 516) in discussing the point, whether a recital in an order made by a surrogate, to the following effect: “ Whereas, said order to show cause was immediately published for four weeks successively, and no cause shown at the time and place specified in said order or any time since,” was conclusive evidence of the facts recited or not. The learned judge held that it was; but held also that, as matter of fact, the publication had been duly made; a majority of the court concurred with him in affirming the judgment, but whether on the ground of the conclusiveness of the recitals, or on the ground of the truth in fact of such recitals, does not appear. If it is claimed that the effect of that opinion was, that the bare recital was conclusive evidence of the facts recited, then the decision would stand thus: The learned judge had held, (p. 511,) that the same rules as *202 to jurisdiction applied to a surrogate’s court as to other courts of inferior jurisdiction; but he had also held, (p. 513,) that the publication of the order to show cause was necessary to the acquisition of jurisdiction by the surrogate. His decision, therefore, must have been that the recital of a jurisdictional fact even in the proceedings of an inferior court, is conclusive which is in direct opposition to the opinion of Judge Mullin in Potter v. Merchants’ Bank, (28 N. Y. Rep. 653, 654,) as well as many other cases. The question, in fact, was, whether jurisdiction had been obtained over the person; the learned judge conceded that the publication of the order to show cause for the length of time, and in the manner prescribed by the statute, was necessary, there having been no appearance to confer jurisdiction; he also conceded that a judgment rendered by a court or officer not having jurisdiction of the subject and the parties, was not conclusive, and yet held that the recital of a jurisdictional fact in the record is an adjudication of its existence, and as such con-.. elusive against one who has not appeared, and who has had no opportunity to appear and defend. I say one who has no opportunity to appear and defend; for, it is well settled that in judgment of law one who' has not been properly brought into court, is, unless he has voluntarily appeared, to be regarded as having had no opportunity to appear and defend. The result is, that a court having no jurisdiction over a person, might, in his absence, without giving him the notice required by statute, adjudicate that it had jurisdiction, proceed, and render judgment against him, and absolutely preclude him from questioning either the judgment or the adjudication, or the question of jurisdiction. This case, therefore, cannot be regarded as binding- authorthority, that the bare fact of there being recitals in the record of a judgment, of facts showing jurisdiction over the subject matter, precludes the party against whom the judgment js rendered, from disproving them in an action where such judgment is relied on.
This leads me to a consideration of the authorities cited *203 by the respondent in support of his claim that the granting of letters testamentary by the surrogate of New York, is conclusive evidence of all the facts necessary to give him jurisdiction. Many of these cases turn on the distinction between the effect of a judgment rendered by a court of superior and general jurisdiction, and one rendered by a court of inferior and limited jurisdiction, which is that the law presumes jurisdiction in a superior court, which it will not do in the case of an inferior one. As a necessary result of this distinction, rules of evidence, pleadings, and appeals that obtain as to judgments of a superior court, are different from those that obtain as to judgments of an inferior court. Thus, on appeal or certiorari, under the former practice, (whatever rule may now be adopted,) the return of the court a quo must show jurisdiction in it, if an inferior court, for it not being presumed, and no evidence being capable of being introduced in the appellate court, it followed that if the return showed no jurisdiction, the judgment must necessarily be reversed; while in the case of a superior ■ court, jurisdiction being presumed, it was unnecessary to state facts showing jurisdiction, (Stewart v. Smith, 17 Wend. 517 ;) so in pleading a judgment of an inferior court, facts must be stated, showing jurisdiction, because there is no presumption of jurisdiction; whereas, if it were the judgment of a superior court, it would be unnecessary to do so, inasmuch as jurisdiction is presumed; for the same reason, to make a judgment of an inferior court evidence for any purpose, its jurisdiction must be first proved, while that of a superior court need not be shown. These rules are the logical result of the general principle before stated. The question next arises, how are the facts, showing jurisdiction in an inferior court to be proved, when it is desired to put such judgment in evidence in a collateral action ? The law in this state is, that if the jurisdictional facts are recited in the proceedings of the court, such recitals are prima facie evidence of the facts so recited; if they are not recited, they must be proved aliunde. (Barber v. Winslow, 12 Wend. *204 102. Hard v. Shipman, 6 Barb. cited from p. 625. Potter v. Merchants’ Bank, 28 N. Y. Rep. 653.)
It Was well said by Judge- Nelson, in Barber v. Winslow, (ubi supra,) “ that the recital of jurisdictional facts in the proceedings of an inferior court must be per se sufficient to uphold its judgment until the contrary is shown; were it otherwise, every judgment of a court of limited jurisdiction-would be reversed, of course, on error brought.” H such recitals be sufficient to support a judgment on a direct proceeding to vacate it upon error brought, there can be no ■good reason why they should not be sufficient to support it prima facie when attacked in a collateral action. Great care is to be observed to avoid confounding the rules of pleading, of evidence, and those that obtain in case of an appeal with each other; since, where the judgment is attacked, on error assigned, the jurisdictional matters must appear on the face of the proceedings; but if attacked in a collateral action, such matters need not appear on the face of the proceedings, but may be proved aliunde. In pleading such judgment in a collateral action the facts showing jurisdiction must be pleaded, but may be proved prima facie either by recitals in the proceedings or by'evidence aliunde, if doubt is thrown upon them.
It may be urged that if the recitals in the proceedings of an inferior court are prima facie evidence, such recitals in the records'of a superior court, should be conclusive. In Potter v. Merchants’ Bank, before cited, it is held that the recitals of jurisdictional matters in proceedings in inferior and superior courts stand upon the same footing, and in both instances are only prima facie evidence. From this view of the effect of recitals of jurisdictional matters it will be found, that many cases which appear to hold that the jurisdiction of a court cannot be attacked when its judgment is called in question in a collateral action, simply hold in fact that the recitals, prima facie, show jurisdiction.
Bearing in mind this distinction between the effect of judgments rendered by the two classes of courts, we pro *205 ceed to the examination of the cases cited by the respondents’ counsel in support of his claim that the grant of letters testamentary, by the surrogate of New York, is conclusive evidence of all the facts necessary to give him jurisdiction. Allen v. Dundas, (3 T. R. 125,) merely decides that, when a court has jurisdiction, its decisions in all matters within that jurisdiction are conclusive, until reversed on appeal; and the court used the following language: “ If the ecclesiastical court has jurisdiction, then its sentence, so long as it stands unreversed, shall avail in all places; but where it has no jurisdiction, the whole proceeding is a nullity.” In Gelston v. Hoyt, (3 Wheat. 315,) the court, it is true, remarked: “ No principle of law seems better settled than that the decisions of a court of peculiar and exclusive jurisdiction must be completely binding upon the jurisdiction of every other court, in which it comes incidentally in controversy.” But, on examining the case, it will be found that the. court applies the principle only where such decisions are made by a court having jurisdiction. In Obert v. Hammill, ( 3 Karr. 73,) the questions arose out of a sale of real estate, made by order of the orphans’ court of the state of New Jersey. On the face of the proceedings there did not appear to be any oath to the account presented to the orphans’ court, or a previous notice of the sale, for the period of six weeks, as required by a statute of the state. The court simply held that such orphans’ court was one of general jurisdiction, and, consequently, its decree could not be treated as void for want of jurisdiction, merely because fact's showing jurisdiction did not appear on its face. In Roborg v. Kammond, (2 Karris Gill, 42,) it was conceded that, under the statute of Maryland, if the intestate had, as was alleged, resided and died in Ann Arundel county, the orphans’ court of Baltimore county had no authority to-grant letters of administration. But the court held that, as under an act of that state, passed in 1798, (chap. 101,) the orphans’ court was expressly enjoined to inquire into and adjudicate on the time and place of the death of the deceased *206 intestate, it was to be presumed that the orphans' court had discharged this duty; and as it had jurisdiction to inquire into and adjudicate on the time and place, and (by force of presumption) had done so, the case presented was one of a court of competent jurisdiction judicially deciding on a matter within its jurisdiction, and a decision so made could not be inquired into collaterally. In Selm v. Sugdan, (7 Serg. & Rawle, 166,) the questions arose on a sale made under an order of the orphans’ court of Pennsylvania, and the decision turned upon the construction of a statute of the state. The court held that the presentation of a certain petition, gave jurisdiction under that statute, and that the testimony of one of the- petitioners that he never asked to apply to the orphans’ court for the sale of the land, nor ever assented to it, was not sufficient to show want of jurisdiction ; for the reason (as I gather from the case) that the proof did not show that there was not a petition signed by the witness, presented to the orphans’ court. A petition, purporting to be signed by the witness, was produced, and as she did not, nor was she asked to, deny that she signed it, the conclusion was inevitable that she had signed it, but had either forgotten the circumstance, or, at the time of signing it, did not know what it was. In course of its opinion, the court held the following language : “ The purchaser is bound to look to the jurisdiction of the orphans’ courts. But the truth of their records concerning matters within their own jurisdiction, cannot be disputed.” In Slate v. Scott, (1 Bailey’s Law R. 294,) the prisoner was put on trial before a court of justices and freeholders, under an act of South Carolina, of 1740, as a free person of color, for negro stealing, and pleaded, to the jurisdiction of the court, that he was not a free person of color, but a free ■white citizen, which was found against him. He then pleaded another plea, which was found in his favor. The presiding magistrate, however, committed him to jail, to be further dealt with, according to law. At the next circuit he was brought up on a writ of habeas corpus, and a motion *207 made for his discharge; but the presiding justice being of opinion that the court of justices had erred in point of law, on the second ground of defense, refused to discharge him, and ordered a writ of mandamus to issue, to compel the said court of justices to proceed on a trial on the merits. From this order the prisoner appealed, and renewed his motion for a discharge; upon which the court said: “ Every court must possess the power of judging of its own jurisdiction, both as to person and subject matter, otherwise the mere pleading would put an end to the cause. The judgment of an inferior court, on a question of jurisdiction submitted to it, has the same binding effect as its judgment in any other matter confessedly within its cognizance. The only exception is, where the want of jurisdiction is apparent on the face of the proceedings themselves. But the party is not obliged to submit the question to that tribunal. He may have a writ of prohibition.” But it held that the prisoner, having submitted the trial of the question of jurisdiction to the court of justices who tried it, he was bound by the decision, no want of jurisdiction being apparent on the face of the proceedings. Holcomb v. Phelps (16 Conn. Rep. 127) was an action of trover brought in the state of Connecticut by the plaintiff, as administrator of Richard Adams, deceased, appointed by a probate court in that state, against the defendant, previously appointed administrator of said Adams by the surrogate of New York, for certain personal property, at the time of said Adams’ death belonging to him, and being in the city of New York. The question as to the place of domicil of the intestate at the time of his death, had been contested before the surrogate of New York county, and, after a full hearing of the parties, that surrogate had decided that, at that time, such domicil was in the county of New York. Under the direction of the judge, who presided at the trial of the action in Connecticut, the jury rendered a verdict for the plaintiff. On appeal being taken, the appellate court ordered a new trial, on the ground that the decision of the surrogate of *208 Hew York county on the question of domicil, made after a full hearing of the parties, must be regarded as conclusive, until reversed on appeal, at least as to those assets which were in the state of Hew York. In the course of delivering its opinion, the following remarks fell from the court : “The operation of any judgment must depend on the power of the court to render that judgment, or whether they had jurisdiction. It must follow, of course, when such, a judgment is brought forward as a ground of recovery or defense, the court, who are called on to act upon it, must inquire whether the court rendering it has jurisdiction or not.” Brittain v. Kinnard (1 Brod. & Bing. 432) was an action brought for seizing and taking possession of a vessel with masts, &c. and a quantity of gunpowder (five hundred and ninety pounds.) On the trial, it appeared that the seizure took place by the defendant, as a magistrate, under the bum boat act. (2 Geo. 3, ch. 28.) The conviction or condemnation put in evidence was, on its face, fair, and showed that, after a trial, at which the plaintiff had been heard in. his defense, the magistrate adjudged that the vessel in question was a boat, within the meaning of the act. The judge, who tried the cause, held the conviction to be conclusive, and ruled out evidence offered to show that the vessel was not a boat, within the meaning of the act. On motion for a new trial the court sustained the decision, holding that it was within the jurisdiction of the magistrate to determine, on the trial, whether the vessel was a boat, within the meaning of the act, or not; that the question must, necessarily, be determined by him on the trial. It was one of the very matters submitted to his determination.
The principle of the decision is the same as that of Slate v. Scott (ante.) In McPherson v. Cauliff (11 Serg. & Rawle, 422,) the question arose out of a sale of real estate,.under an order made by the orphans’ court of Pennsylvania. • Guardians ad litem had been appointed for two infants, at that time supposed to be the legitimate children of the testator, one of whom was the plaintiff in the action. After a great *209 lapse of time the plaintiff discovered that his father, (the intestate,) was married to another woman, who was alive at the time of the marriage of the latter with his (plaintiff’s) mother, and that there were children of that marriage living; whose interest in the property he bought, and then brought his action, claiming the proceedings in the orphans’ court to be void, for want of jurisdiction over the persons of his grantors. The court held that he was estopped from setting up this claim, and that the proceedings being in rem, there was no necessity for obtaining jurisdiction over the persons of those interested in the land, in order to enable the orphans’ court to act. In the course of giving their opinion, the court remarked: “ If administration were taken out on the effects of a living man, or of one who died intestate, the administration itself w.ould be void, and there could be no administrator to act, no party before the court; consequently all the proceedings would be null. A probate of a will of a living person, or letters of administration on his effects, when a person is dead, but left a will, is void, ipso facto, because there is no jurisdiction.” Dyckman v. The Mayor, &c. of New York, (5 N. Y. Rep. 434,) was an action of ejectment, in which the plaintiff claimed an undivided share (one seventh) of the lands in question, under the will of his father, (William N. Dyckman.) By an act of May 2, 1834, (Laws of 1834, p. 451,) the commissioners mentioned in the act were authorized to agree with the owners of any property required for the purposes of the act, as to the amount of compensation to be paid to such owner. In case of disagreement between» any owner of such property and the commissioners, as to the amount of compensation, the vice chancellor of the first circuit was authorized, on application of either party, to appoint persons to examine .such property, and estimate the value thereof, and of damages sustained thereby, and report thereon to the court, and upon confirmation of such report by him, the commissioners were required to pay, within two months thereafter, to such owner, or such persons as the *210 court might direct, the sum mentioned in the report, in. full compensation for the property so required, or for the damage sustained, as the case might be; and it was provided that thereupon the mayor, &e. of the city of Hew York, should become seised in fee of said property so required, and discharged from all claim by reason of any such damage. Under this act, the commissioners presented to such vice chancellor a petition, setting forth various proceedings had by them; also that the lands in question were required for the purposes of the act, the names of the parties, (including the plaintiff) who were seised of the land, and that they had been unable to agree with either of the owners on the amount of compensation to be paid for the land; and prayed for the appointment of persons to examine the property, estimate its value, and report thereon, and that, on the confirmation of the report, a decree might be made directing that, upon payment of the sums mentioned in the report, within two months thereafter, to the owners, the title to the property might become vested in the mayor, &c. of Hew York. The defendants read this petition in evidence ; also a notice that such petition would be presented to the vice chancellor on a day named, and a motion made that its prayer be granted, with an affidavit of the service of such petition and notice on the widow and children of the party last seised; the service on three of the children (of whom the plaintiff was one,) having been made by delivering a copy of the petition and notice to their mother, at her residence, on the premises. They then read an order made by the vice chancellor on the petition, appointing appraisers as prayed for; also their report and an order reciting, that William H. Dyckman appeared as counsel for the owners and opposed the award on the ground of inadequacy of the damages, and referring the matter back to the appraisers to receive further testimony, and make a further report; also a second report adhering to the first valuation, and an order confirming it; William H. Dyckman again appearing as counsel for the owners and opposing the confirmation. Two *211 days after the last order the amount of the appraisal was tendered to J. 0. Dyckman, one of the owners who had been the principal actor before the appraisers, and who refused to receive it, saying “we have made up our minds-not to take the appraisalan application was then made for leave to pay the money into court, which was opposed by the owners, and denied on the ground that an appeal had been taken from the order confirming the second report. The plaintiff then offered to prove that no attempt was made to agree with him as to the amount of compensation, but the proof was excluded. Evidence was then given that all the owners had employed William N. Dyckman to act for them. This was the case presented to the Court of Appeals. Two opinions were delivered, one by Foot, J. and one by Gardner, J. Only two of the questions raised in that case have any bearing on the present subject of discussion, viz. those arising out of the rejection of the testimony offered to show that there had been no disagreement as to amount of compensation, and those arising out of the mode of service of the notice of presentation of the petition; all the other questions raised had clearly no bearing on the question of the jurisdiction of the vice chancellor. As to the objection to the service of the notice, only Judge Foot gave an opinion. He held it was waived by appearance, stating that on general principles nothing is clearer, than that a party, entitled to notice of a judicial proceeding, by appearing in pursuance of it, waives all objections to its insuffi-. ciency. As to the rejection of the offer to show no disagreement, Judge Foot sustained the rejection, holding “ that when the jurisdiction of a court of limited authority depends on a fact, which must be ascertained by that court, and such fact appears and is stated in the record of its proceedings, a party to such proceedings, who had an opportunity to controvert the jurisdictional fact, but did not, and contested on the merits, cannot afterwards, in a collateral action against his adversary in -those proceedings, impeach *212 the record and show the jurisdictional fact therein stated, to be untrue.” Judge Gardner held that the fact being stated in the petition and sworn to upon the knowledge of one of the commissioners, was sufficient to give the vice chancellor jurisdiction prima facie; that the appellant could have controverted this fact, but he did not; on the contrary, he submitted to having appraisers appointed and the damages assessed by them, with the concurrence of his counsel; that having so acted, he could not afterwards, in ejectment, insist that due proof was not made of a jurisdictioal fact, which, if not admitted, was certainly not contradicted by him. It is true that Judge Gardner, after disposing of the point on the above ground, said (as I understand the bearing of his language,) that he was inclined to think, that the allegation in the petition sworn to, on the knowledge of one of the commissioners, was conclusive evidence of the jurisdictional fact; but he does not say that he so holds, or that he has come to the consclusion upon an examination of the authorities, or upon a full consideration of the case in that aspect. As he had already disposed of the case on other grounds, these remarks can only be viewed as an expression of the leaning of his mind, without a strict examination of the point, and not as expressing the conclusion to which he would arrive on an examination. In Erwin v. Lowrey, (7 How. U. S. 172,) the appellant had filed a petition in the U. S. circuit court of Louisiana for the foreclosure of a mortgage made by one Alexander McNeil. The petition . set forth that the petitioner (Erwin) was a citizen of the state of Tennessee, residing therein, and that Hector McNeil, (testamentary executor of Alexander McNeil,) a citizen of the state of Louisiana, residing in the parish of Madison, within the jurisdiction of the court, was indebted. Hector McNeil was served with process, but made no defense. Such proceedings were thereon had, that judgment of seizure and sale was rendered; upon the sale the appellant (Erwin) became the purchaser and received the Marshal’s deed. Subsequently the respondent, (Lowrey,) was *213 appointed curate of the vacant succession of Alexander McNeil and commenced an action in a state court, claiming the restoration of the property. The state court allowed proof to be given that Hector McNeil, at the time of the filing the petition by the appellant (Erwin) was not a citizen of the state of Louisiana. From the judgment rendered by the state court, in favor of the respondent, an appeal was taken to the United States Supreme Court. That court in its opinion said: “ In the case before us the record on its face was perfect, and evidence was let in to contradict and overthrow it, which we deem wholly inadmissible in any collateral proceeding. Hector McNeil was estopped to deny the fact, and so is the present party, his successor. The ease of McCormick v. Sullivan, (10 Wheat. 192,) is entitled to great weight on the question as to whether a fact established by the record can be called into question in a collateral action and disproved.” On referring to the case so cited from 10 Wheaton, it will be seen that all, which that case holds is, that the United States district courts are not inferior courts, and that consequently their judgments are not void because jurisdiction does not appear on the face of the record.
In Grignon’s Lessee v. Astor, (2 How. U. S. 319,) the question arose out of a sale of real estate, made under an order of the county court of one of the counties of the state of Michigan. A statute of that state provided that when the goods and chattels of any person deceased, should not be sufficient to answer his debts, upon representation thereof, and the same being made to appear in the county court in the county where the deceased last dwelt, or in the county in which any real estate of his might lie, such court should be authorized to license the executors and administrators to make sale, of such real estate. It further provided that the executor or administrator, before making sale, should give a certain number of days’ notice thereof, (30;) that every representation to be made to the county court should be accompanied with a certain certificate from the judge of *214 probate of the county, where the decedent’s estate was inventoried ; that the county court before passing on the representation, should order due notice to be given to all parties concerned who did not assent to the sale, and when it deemed it expedient, might examine the petitioners on oath touching the truth of the facts set forth in the petition and the circumstances attending the same. On the trial, the following extract from the minutes of the county court in question being offered: “ The petition of Paul G-rignon, administrator on the estate of Pierre Grignon, late of the county of Brown, was filed by the attorney, praying for an order from the court authorizing him to dispose of the real estate of said Pierre. In consideration of the facts alleged in said petition, and for divers other good and sufficient reasons, it was ordered, that he be empowered as aforesaid.” It was objected to, because it did not appear that there was any petition presented, nor any certificate of the judge of probate, nor any notice to the parties concerned to show cause, nor any reasons by which the court could be invested with power to order a sale, and because the order did not specify what lands were to be sold; the objections were overruled and the minutes read. The license for a sale was then read in evidence, reciting that the administrator had made a representation to the court, and also the facts which he had presented, (the facts being those required by the statute to be presented,) which thus proceeded: “ Now, therefore, for the causes aforesaid, and for divers other good and sufficient reasons the court thereunto moving, they do hereby authorize you, &c. to dispose of all the rights, &c. in the above described lots of land,” &c. Evidence was also given, tending to show .the giving of due notice of sale. There was no evidence of any notice to the parties concerned to show cause, and no evidence that a certificate of the'judge of probate had been presented. The court below held that these matters were not necessary to give jurisdiction, and that the judgment of the county court was conclusive evidence that *215 the statute had been complied with in these particulars. On appeal to the Supreme Court of the United States, the court held, that the merits of the controversy depended on one single question. Had the county court jurisdiction of the subj ect on which they acted ? It then held that the proceeding was in rem, and that therefore it was unnecessary that the court should have jurisdiction over the persons of the parties interested, to empower it to act. Under this holding, it is evident the want of notice to the parties concerned to show cause did not affect the jurisdiction. The same court also held that no other requisites to the jurisdiction of the county court were prescribed, than the death of Grignon, the insufficiency of his personal estate to pay his debts, and a representation thereof to the county court where he dwelt or his real estate was situated, making these facts appear to the court; that it appeared from the records of the county court, that a petition was presented and acted on, and the law presumed the petition to have been sufficient. It is true the court, in course of the opinion, use the following general language: “ After the court has passed on the representation of the administrator, the law presumes that it was accompanied by the certificate of the judge of probate, as that was requisite to the action of the court; their order of sale is evidence of that or any fact which was necessary to give them power to make it, and the same remarks apply to the order to give notice to the parties. The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial if no appeal is taken. The record is absolute verity, to contradict which there can be no averment or evidence.”
In Sergeant v. State Bank of Indiana, (12 How. U. S. 371,) the plaintiff on the trial in the court below, read in evidence an order made by the circuit court of Tippecanoe county, which recited as follows: “It appearing to this court now here that proper and legal notices have been given.” The defendant to contradict this recital read an authenticated notice published in the newspapers, requiring the heirs to *216 appear at a different time and term, from that at which the proceedings were held, and an affidavit of publication indorsed as being filed on a certain day, signed by the cleric. The Supreme Court of the United States held that the mere finding of a paper among the files of a cause, does not constitute it a part of its record, and then said; “There is nothing in the record of the circuit court of Tippecanoe to show that the paper in question was ever brought to the notice of the court. The real, veritable record informs us that legal and sufficient notice was given, but whether by this paper, or in what other mode (except that it was legal and sufficient) we are not told, and are not at liberty in this case to indulge in inferences against the verity of the record.” Having thus disposed of the points on the ground that the paper did not in fact disprove the recital, the court proceeded to say : “ It is a principle, well settled too, in judicial proceedings, that whatever may be the powers of a superior court in the exercise of regular appellate jurisdiction to examine the acts of an inferior court, the proceedings of a court of general and competent jurisdiction cannot be properly impeached and examined collaterally by a distinct tribunal or not acting in the exercise of appellate power.”
I have now reviewed all the authorities cited by the respondents’ counsel in support of the proposition, that the letters testamentary granted in this case are conclusive evidence of the surrogate’s jurisdiction, and assume that he has cited the strongest authorities to be found in the books; but aside from an expression of opinion by judges in two of the cases, (Allen v. Dundas, and Gelston v. Hoyt, ubi sup,) none of the authorities infringe on the correctness of the doctrine enunciated by the judges of this state, to wit, that the judgment of every court will be void for want of jurisdiction, and that the recitals of jurisdictional matters in the record of the judgments of any court, do not of themselves preclude the showing by affirmative proof, dehors the record, that the recitals are untrue.
These cases simply hold that the decision, of a court on *217 all matters within its jurisdiction is conclusive until reversed on appeal. The case of Obert v. Hammill, (ubi sup.) holds that the record of judgment of a court of general jurisdiction is not void by reason of not stating facts sufficient to give jurisdiction, on the ground that the jurisdiction of such a court is presumed. The question as to whether this presumption could be overcome by proof was not raised, discussed, or decided. The case of Roburg v. Hammond, (ubi sup.) decided that where a statute expressly enjoined on a court to inquire into and adjudicate certain matters, the existence of which is necessary to its cognizance of a cause, or proceeding, its determination on those matters is a judicial decision made within the jurisdiction conferred by statute, and is conclusive, until reversed on appeal. The principle of that decision does not apply to the present case, for there is no statute requiring the surrogate to determine the residence of a decedent. The case of Selm v. Snyder, (ubi sup.) decided, that under the statute of Pennsylvania, the orphans’ court acquired jurisdiction by the presentation of a petition. It further held, as I read the case, that the proof offered did not go to the extent of showing that no petition was presented. The question as to whether proof was admissible to show that no petition was presented, was not, as I understand the case, passed on. The principle of that decision does not apply to the present case, for there is no statute under which a surrogate in this state acquires jurisdiction by the bare presentation of a petition. The case of Grignon’s Lessee v. Astor, (ubi sup.) was decided, so far as jurisdiction over a subject matter is involved, on the same principle as the case of Seim v. Snyder, and the remarks made on that case apply to the case of G-rignon. A question was raised as to jurisdiction over the person, on which question, the court held that a proceeding to sell lands in an orphans’ court was a proceeding in rem, and consequently jurisdiction over the persons of the owners of the land was unnecessary to give power to the court to act. This latter decision seems, however, contrary to the *218 doctrine of this state, relative to sales of real estate ordered by a surrogate’s court. The case of McPherson v. Cunliff, (ubi sub.) also simply held that the proceedings had in that ease were in rem, and that consequently there was no necessity for obtaining jurisdiction over the persons of those interested in the land, to enable the court to act. The case of Sargeant v. State Bank of Indiana, (ubi sup.) merely decided that a certain paper, read in evidence, was insufficient to contradict its recital in the record. The cases of State v. Scott, Britain v. Kinnard, Holcomb v. Phelps, Dyckman v. The Mayor, (ubi sup.) decided that where a court is given jurisdiction by statute over a subject, dependent, for its exercise in a particular case upon the existence of certain facts, and the papers by which it is called on to exercise its powers show the existence of these facts, the adverse party by appearing and contesting the existence of the facts, will, in the event of a decision being given against him, be absolutely bound thereby, until it is reversed on appeal, or if he appears and admits the jurisdictional facts, by contesting the' merits merely, he will be held concluded from afterwards alleging that such facts did not exist. The case of Erwin v. Lowrey, (ubi sup.) seems to have been decided on the ground that a defendant, who is served with process, must appear and contest the jurisdiction of the court, otherwise he will be estopped from denying the jurisdictional facts asserted in its record. It is true the learned judge intimates that a fact established by the record cannot be called into question in a collateral action, and disproved; but the case to which he refers in support of the proposition falls far short of sustaining it.
While on the one hand there is language used in the opinions, in the case of Sergeant v. State Bank of Indiana, and Grignon’s Lessee v. Astor, (ubi sup.) to the effect that the bare fact of the rendition of a judgment by a court of superior and general jurisdiction, and the bare fact of the recital of jurisdictional facts in the record of the judgment of a court of inferior and limited jurisdiction, is conclusive evidence of the existence in the first case of all jurisdictional *219 facts, and in the other, of those so recited, so on the other hand, there are expressions of opinion to the contrary, (at least equally as strong,) in the case of Allen v. Dundas, Selm v. Snyder, Holcomb v. Phelps, and McPherson v. Cunliff, (ubi sup.) The language employed on that subject, in the cases of Sergeant and Orignon was used after the cases had been disposed of on other grounds, and is so general, and couched in such terms as to well justify the inference that the court was referring to the conclusiveness of subsequent proceedings after jurisdiction was properly obtained.
Much of the confusion that exists respecting the right to attack the jurisdiction of a court in a suit or proceeding in a collateral action, arises from the fact that proper attention is not paid to the points decided in the various cases, and the principles upon which the decisions rest. Thus, no less than five distinct classes of cases, to wit, (1;) Those which hold that, as to some courts, a recital of a jurisdictional fact in the record, is prima facie evidence thereof; (2.) Those which hold that, as to other courts, jurisdiction is presumed; (3.) Those which hold that, under statutory provisions, the bare presentation of a petition or affidavit, containing certain allegations, confers jurisdiction; (4.) Those which hold that if a party appears and litigates on the merits, he cannot subsequently question the jurisdiction, collaterally, ■ unless the want thereof appears on the face .of the record; and (5.) Those which hold that, if he appears and litigates a jurisdictional fact in a court, he is bound by its determination until reversed on appeal, are, with others, cited indiscriminately, to establish the proposition that the jurisdiction of a court of general and superior jurisdiction, can in no event be attacked collaterally, unless the want of jurisdiction appears on the face of the record, and that if jurisdiction appears by the recitals in the records of a court of limited and inferior jurisdiction, its jurisdiction cannot be attacked collaterally.
As no advantage can be taken in a collateral action of an error or irregularity committed after jurisdiction has *220 been obtained, it is necessary to guard against falling into the error of regarding a decision that certain matters cannot be proved to establish want of jurisdiction, as one that jurisdiction cannot be attacked collaterally. To' do this, it is necessary to have a general view of what are jurisdictional matters. There are two general heads of jurisdiction : Eirst,. Over the subject matter; and Second, over the person. The first head may be subdivided into several kinds, to wit: (1st.) That which is exercised generally over some particular subject without any restriction or limitation. (2d.) That which depends either on the origin of the cause of action in a particular place, the residence of the parties, or some of them, the service of process in a particular place, or the happening of some event. (3d.) That which is obtained by force of some statute, by a court or magistrate by merely presenting to it or him a petition or affidavit, containing allegations tending to establish certain matters required to be established by the statute. (4th.) That given by statute to a magistrate or court preliminarily, to inquire into, and adjudicate on matters the existence of which is necessary to its cognizance of a cause or proceeding. And (5th.) That given by statute, to decide and convict on view, and record the view and conviction.
It will be seen from this division, that the circumstances necessary to confer jurisdiction over a subject matter differ according to the kind of jurisdiction to be exercised. This proposition is too evident to need argument. It is also apparent that decisions upon questions of jurisdiction over the subject matter, in cases arising under any one of such subdivisions, can have no application to cases arising under the others, except that class of decisions which hold that where it appears on the face of the proceedings that there is no jurisdiction whatever over the subject, jurisdiction cannot be acquired either by consent or otherwise, which class of decisions is applicable to all the subdivisions. The case at bar would fall within the second subdivision. The surrogate’s jurisdiction depends, as has been before shown,' *221 on the happening and concurrence of certain events. The statute does not prescribe, that on the presentation of a petition or affidavit containing allegations tending to show the existence of certain facts, the surrogate shall proceed to issue citations and take proof of the will, nor does it require him to-inquire into and adjudicate upon the matters necessary to his taking cognizance of the probate of a will. It is true there is a provision, that he shall ascertain certain facts, but the facts so to be ascertained have reference solely to the determination of what persons are to be cited, and their places of residence. The statute in this respect is very similar to section 135 of the Code relating to the publication of a summons. That section prescribes five different cases in which publication can be ordered, but does not require that the facts, which show that the particular cause in which publication is desired fall within any one of those cases, should be made to appear to the court by affidavit, although certain other matters are required to be made to appear. Under this section it is held that the power of the court to grant an order of publication depends on the existence of the facts which by the law authorized publication, and not on the presentation of an affidavit, swearing to the existence of such facts. (Fiske v. Anderson, 33 Barb. 71.) In Sheldon v. Wright, (ubi sup.) the question, as to what was necessary to give the surrogate of Cayuga county jurisdiction to issue letters of administration arose. In that case the point was expressly raised, that the surrogate had no jurisdiction, because there was no proof before him of the death of Sheldon, and that he died intestate. Upon this point that court held that under 1 R. L. of 1813, (p. 445,) only two facts were necesssary to give to that surrogate jurisdiction over the subject matter of hearing and determining whether the letters of administration should be granted, and of granting the letters in case of a decision that they should be granted: those were (1st.) The death of a person; and (2d.) That at his death he was an inhabitant of Cayuga. That the statute did not require preliminary *222 proof to be made to the surrogate, of the facts on which his jurisdiction depended. The third section of this act of 1813, contains a provision that no administration shall be granted until satisfactory proof shall be made before the surrogate that the person of whose estate administration is claimed is dead, and died intestate. The court held that this proviso was merely directory, and that the want of such proof did not affect the jurisdiction. The decision on this point has not been overruled, nor had its force weakened by any subsequent decision, and it seems to me quite correct upon principle. I have already referred to that case, when considering the question .of attacking jurisdiction, and examined its bearing upon that.
Upon a comparison of the act of 1837 with the act of-1813 and section 135 of the Code, I think it will be found that the decisions fully sustain my view, that under the act of 1837, the jurisdiction of a surrogate over the probate of a will depends on the actual existence of certain matters, and not on the presentation of a petition or proof tending to show their existence.
As jurisdiction depends on the actual existence of certain matters, it follows that proof may be introduced in a collateral action to show that such matters did not exist, upon the principle that want of jurisdiction may always be shown by proof of the non-existence of jurisdictional facts, even though these matters may be asserted by the record to exist. It also follows, that those cases which hold, that where the jurisdiction depends upon the presentation of a petition or an affidavit showing certain matters, or upon such matters being proved satisfactorily, and such petition or affidavit, containing allegations tending to establish such matters, has been presented, or proof has been given having the same tendency, there want of jurisdiction cannot be shown, by proving the matters stated in the petition or affidavit, or shown by such proof to be false, do not apply to this case. That class falls within the before mentioned third and fourth subdivisions of jurisdiction. Roburg v. *223 Hammond, Selm v. Snyder, Grignon’s Lessee v. Astor, (ubi supra,) as well as Kelly v. Skinnion, (18 N. Y. Rep. 356,) are decisions in cases arising under those third and fourth subdivisions ; the ease of Brittain v. Kinnard, (ubi supra,) is a decision under the fifth; Allen v. Dundas, Gelston v. Hoyt and Obert v. Hammell, (ubi supra,) do not touch the question whether jurisdiction can be attacked collaterally. Sergeant v. State Bank of Indiana, (ubi supra,)' simply holds that the proof offered was insufficient to contradict the record; and the ease of McPherson v. Cunliff, (ubi supra,) that in a proceeding in rem, there was no necessity of obtaining jurisdiction over the persons of the parties interested in the subject affected by the determination. The case of Erwin v. Lowrey, which falls within the second of such subdivisions (but for reasons before given) cannot be regarded as authority that the bare recital of a jurisdictional fact is, of itself, conclusive as to the existence of the fact. This train of reasoning leads irresistibly to the conclusion that by reason of the decedent having been, at and immediately prior to his death, an inhabitant of Columbia county, the surrogate of New York had no jurisdiction to admit the will to probate, and that the plaintiffs were not precluded from showing such want of jurisdiction by proof dehors the record, unless the principle laid down in the cases of Slate v. Scott, Holcomb v. Phelps and Dyckman v. The Mayor, (ubi supra,) that he who has appeared, and either litigated on the merits or litigated on a jurisdictional matter, or simply appeared, and by offering no opposition, tacitly admitted the existence of jurisdictional matters affirmatively alleged, is precluded from showing that the judgment rendered upon such appearance and litigation or concession is void for want of jurisdiction by proof dehors the record, is applicable. I do not question the soundness of that principle, but it has no application to this case. These plaintiffs did not litigate before the surrogate either the validity of the will or any of the facts upon which his jurisdiction depended, nor did they appear by any act of their own or of any guardian appointed on their own *224 application. True, the surrogate, of Ms own motion, appointed a guardian for them, but he had no jurisdiction to do that, unless he also had jurisdiction to entertain the proceedings for the probate of the will; he cannot merely, by unlawfully assuming jurisdiction to appoint a guardian for infants, thereby conclude the infants, by the acts of that guardian, from contesting his jurisdiction to either appoint the guardian or to admit the will to probate. Some cases, among them the case of Erwin v. Lowrey, advance the further principle that a party who, after having heen served with notice or process, fails to appear, by such non-appearance admits the truth of any jurisdictional matter affirmatively appearing on the record, and is precluded from controverting it. To what extent this principle can be sustained upon a strict investigation of its foundation, it is unnecessary here to inquire; while on the one hand it seems a logical anomaly to say, that the refusal to obey a mandate issued without authority, admits that there was authority, on the other hand, it may be said that one served with process or notice, is-bound to presume that the facts necessary to confer jurisdiction were made to appear to the court from which, or magistrate by whom, the process was issued, and if he neglect to appear and contest these facts before that magistrate or court, it is by his own negligent act that the court continues to entertain jurisdiction and render judgment, and that he cannot take advantage of his own negligent act to avoid the necessary consequence thereof. "Whether, however, that principle be correct or not, is not now necessary to be discussed, as it has no application to the present case. No process was served either on the plaintiffs or any guardian for them; and the appearance of a special guardian for them has been before shown to be insufficient, either to confer jurisdiction or to preclude the plaintiffs from controverting it by proof dehors the record.
Before concluding this branch of the ease, it will be proper to advert to the case of Bumstead v. Read, (31 Barb. 661.) In that case one of the executors of the will of a *225 Mr. (Thomas) Bumstead, (Arba. Read,) made application, with the written consent and request of Henry, William and Stephen Bumstead, to the surrogate of Rensselaer county, by petition, for the probate of that will. The petition set forth that the testator died at the city of Troy, in the county of Rensselaer, and that his residence at the time of his death was in that county. A citation, reciting this allegation in the petition, was issued and served on said Henry, William and Stephen, as well as others; but neither of them appeared on the return day, nor did they dispute the allegation in the petition concerning the residence of the testator, but previously expressly requested and consented to the taking proof of the execution of the will, and the granting of letters testamentary thereon by the surrogate of Rensselaer county. That surrogate thereupon admitted the will to probate and issued letters testamentary thereon. Subsequently, Henry Bumstead made application to the surrogate of Saratoga county, for the probate of the same will. This was opposed on the ground that the will had already been admitted to probate before the surrogate of Rensselaer, on the request of such applicant. The surrogate of Saratoga refused to admit the will to probate, and on appeal his decision was affirmed. It was evident from these facts that, under the principles of the before mentioned cases of Slate v. Scott, Holcomb v. Phelps and Dyckman v. The Mayor, Henry Bumstead was not in a position to dispute the validity of the probate by the surrogate of Rensselaer county, on the ground of want of jurisdiction, or to claim that any other surrogate had jurisdiction, for the jurisdiction of the surrogate of Rensselaer, appeared on the face of his record, and Henry Bumstead was an actual participant in those proceedings, and in procuring the probate before that surrogate. By this participation he was precluded from contradicting, the record. Upon this ground the decision rests. True, the learned judge who delivered the opinion employed some expressions', which, taken by *226 themselves, would warrant the conclusion, that in his view the-surrogate’s acting upon a petition setting forth the facts concerning the testator’s residence, would be an adjudication upon those facts conclusive upon all who had been served with a citation, (whether they appeared or not,) until reversed on appeal; but there are other expressions which would seem to limit this, conclusiveness to those who appeared ánd litigated. If, however, he is to be regarded as asserting its conclusiveness without the limitation, his conclusion must be based on the assumption, that the statute makes the jurisdiction of the surrogate depend on the bare fact of the presentation of the petition containing certain allegations, or upon a decision of the surrogate under jurisdiction given him by statute to preliminarily inquire into, and adjudicate on the matters, the existence of which is necessary to his taking cognizance of the probate of the will, and not upon the existence in fact of the matters themselves ; since the same learned judge, .subsequently, in the case of Fiske v. Anderson, already referred to, held, that when the jurisdiction of a court to render a judgment-depends on the existence of a fact itself, the existence of that fact is open to contestation by the party against whom the judgment was rendered, when the judgment is sought to be used against him. This assumption, however, as to wills of real estate, is erroneous, since, as has been shown, the jurisdiction of the surrogate depends on the actual inhabit-' ancy of the testator in his county, at or immediately prior to his death. A party who, after being duly cited fails to appear, may, perhaps, as before suggested, in some, if not all eases, be concluded from contradicting the recital of jurisdictional facts in the record. If so, however, it is not on the ground, that there has been an authorized adjudication of the fact, but because the party served, if he disputed the jurisdictional facts, was bound to appear and litigate them, and not having done so, through his own negligent act, cannot take advantage of that act to avoid its consequences.
*227 The conclusions at which 1 have arrived are: That, the plaintiffs were not concluded from showing, by evidence dehors the record, that the surrogate of New York had no jurisdiction .to admit the will to probate, and that the evidence adduced by them proved his want of jurisdiction, and that the probate record of the will, and letters testamentary, were, therefore, inoperative. It may here be mentioned, in passing, that even if the surrogate had had jurisdiction, and the probate was, consequently, perfectly valid, it is a matter of some question, whether such probate would amount to more than prima facie evidence of the due execution and validity of the will, subject to be rebutted by affirmative proof. (R. S. part 2, chap. 6, title 1, § 15. Laws of 1837, p. 528, § 18. Jackson v. Rumsey, 3 John. Cas. 234. Morris v. Keyes, 1 Hill, 540.) Compare remarles in Harris v. Karris, (26 N. Y. Rep. 440,) with reasoning in Vanderpoel v. Van Valkenburgh, (6 N. Y. Rep. 190.) But notwithstanding the invalidity of all the proceedings had before the surrogate, the plaintiffs were not entitled to recover, if the defendants proved the formal execution of the will, according to the requisitions of the statute, and its contents; unless it appears either that the power of sale contained in the will can only be executed by Burrowes, in his capacity as executor, after letters testamentary issued to him, or that by reáson of the invalidity of some of the provisions of the will, the plaintiffs took a vested fee in the premises, or in some undivided interest therein, divested from the operation of the power of sale, or, failing these, unless it is shown either that the testator was incompetent, or that the will was procured by undue influence.
The next point, then, for consideration is, whether the defendants, on the trial, proved the formal execution of the will, according to the requisitions of the statute, and its contents. For this purpose the copy of the will, as recorded in the surrogate’s office, with the copy of the depositions of John McCahill and Thomas Harrison, taken before the surrogate, which were recorded with the will, were properly *228 received in evidence, as being links in the chain of evidence to prove the execution and contents of the will; the remaining links necessary to complete the chain were furnished by the evidence of McCahill and Harrison, given on the trial of the cause. The testimony, taken altogether, clearly established the formal execution of the will, according to the provisions of the statute, and the contents thereof.
Let us next consider whether, by reason of any of the matters above indicated, the plaintiffs can recover. And, first, was it necessary that the will should be proved, and letters testamentary issued, before Burrowes could execute the power of sale ? I think not.’ He took as a donee of a power, in his individual capacity, and not in his capacity as executor. The proceeds of the sale were not to be applied by Burrowes in the course of the duties of his office as executor. On the contrary, they were to be applied for the benefit of the testator’s wife and children, according to the provisions of the will. The effect of the clause containing the power of sale, being a conveyance, “with power to sell, invest, re-invest, for the benefit of the wife and children as aforesaid,” taken in connection with the previous provisions of. the will requiring the executor to pay the interest, income, rents and proceeds of his property to such wife and children in the manner directed, is to create a trust for those objects, and place the property in the hands of the person named executor, as trustee to carry out the trusts, giving said trustee a power of sale. Under such circumstances the person named as executor takes not as executor, but as the donee of a power in his character as trustee, and his right to sell is derived from the will, and not from the probate thereof, or the letters testamentary. (Dominick v. Michael, 4 Sandf. 374, 400. Conklin v. Egerton’s adm’r, 21 Wend. 430. Newton v. Bronson, 13 N. Y. Rep. 587, 593.) The cases of Thomas v. Cameron, (16 Wend. 579,) and Taylor v. Morris, (1 Comst. 341,) cited by the plaintiff, are not in opposition. The first of those cases was in reference to a matter clearly wholly executorial. In the *229 second the power to sell was for the sole purpose of payment of debts, which is a pure executorial duty. By reason of this circumstance, the power vested in the executor virtute officii.
Second. Did the plaintiffs, by reason of the invalidity of some of the provisions of the will, take a vested fee in the premises, or in some undivided interest therein, divested from the operation of the power of sale ? The first question arising upon this is, are any of the provisions of the will invalid ? The plaintiffs claim that the trust in favor of the children is void, for the reason that there is an implied provision for the accumulation of rents and profits, which is invalid, because it is not exclusively for the benefit of minors alone, but is for the benefit of minors and an adult (Philip Burrowes) jointly. As I understand the proposition, it is, that if a direction for accumnlation pursue the statute in every respect, by directing the accumulation to commence at the death of the testator, for the benefit of a minor then in being, out of the rents and profits arising from an estate given by the will to such minor, and to terminate at the expiration of the minority ; yet that such direction will be void, if the testator provides in his will that the estate given to the infant, and accumulations thereof, shall, in the event of the death of the minor before arriving at age, go to some other person. In other words, that if a testator desire to make a valid provision for an accumulation, he must leave it in such a shape as that, in the event of the death of the minor before arriving at age, either he (the testator) must die intestate as to the accumulations, or the minor in its lifetime become so possessed of the accumulations, that they will go over to his personal representatives. No decision is to be found sustaining that proposition. The accumulation must, it is true, be for the benefit of the minor, during whose minority it is to take effect. Consequently an accumulation directed, during the minority of a minor, cannot be made payable to any one else upon such minor’s arriving at age, but must *230 be made payable to such minor; otherwise, in no sense could the accumulation be said to be for the benefit of the minor. If, however, the minor dies before arriving at age, that accumulation must cease, and the beneficiary being no . longer in existence, the accumulated fund cannot, as a matter of necessity, be applied to his benefit. As by the-act of Q-od, it has become impossible to comply with the provisions of the statute, by devoting the accumulations to the benefit of the minor, the accumulated fund must, if there are no directions in the will, and no clause in the will which would carry it' in a different direction, revert back, and, in such event, the testator would die intestate as to such fund. But there is no reason why a testator should not have the power to anticipate such an event, and treat this accumulated fund as a part of his original estate, and devise it to such person as he chooses. But assuming that, by reason of the devise over to Burrowes, the whole provision for accumulation is void, still, that would not avoid the trust in respect to the widow, nor the trust to collect and pay rents to the two children ; its only effect would be to make the whole of the rents arising out of two thirds of the property, payable to the daughter, instead of only as much thereof as the executor may see fit. (Lang v. Ropke, 5 Sandf. 363, 371.)
It is next claimed that the provision of the will in respect to the one third, wherein a life estate is given to the widow, is void, inasmuch as it suspends the absolute power of alienation for more than two lives in being, at the creation of the estate, viz. the death of the testator. The devise over to Burrowes of the share, is clearly invalid, since, before he can take under it, three deaths must occur, that of the widow, and those of both daughters. This, however, does not make the other provisions, in respect to this third, void, for they have no necessary connection with the devise to Burrowes. That devise is of a legal estate, dependent upon the execution of all the previous trusts, by the happening of a certain event. It follows that striking out *231 the provision in favor of Burrowes, would have no effect upon the carrying out of the trusts. Without that provision, the trusts weró just as capable of being carried out to the fullest extent, and in .the minutest details intended by the testator, as with it.' Thus, then, within, the principles-of Harrison v. Harrison, (42 Barb. 162. S. C. Court of Appeals, Trans, ed. vol. 2, p. 348,) the provisions of the will respecting this third, other than the devise over to Burrowes, are valid.
The power of sale being given to be exercised in carrying out the trusts in favor of the wife and children, it necessarily continues operative as long as those trusts continue. They clearly continue as to the entire estate, as long as the widow and both children remain in life. Upon the death of, the mother, her third may perhaps have vested in fee equally in the plaintiffs, free from subjection to the power of sale. This point, however, we have not considered, and express no opinion upon, since it was not raised or argued, and since it does not appear in the case whether the widow was alive or deceased at the time of the sale by Burrowes of the premises in question.
It thus becomes necessary to consider whether there is sufficient evidence tending to show either that the testator was incompetent, or that the will was procured by undue influence, to call for the submission of those questions of fact to the jury. After a careful review of the testimony, we think there was sufficient to call for a submission of the •question of fact, whether the will was procured by undue ■influence; but we do not mean to intimate what the verdict should be; nor, as there must be a new trial, and we . are not advised of the evidence which may be given thereon, to decide in advance whether the verdict that may be rendered on such new trial, which ever way it may be, even on the evidence before us, will be sustainable;, we, therefore,’ do not consider, nor pass upon the point raised by the plaintiff) that, from the facts proved, there is a legal presumption of undue influence, since those facts may be *232 materially changed by the proof to be given on the new trial; we merely hold that there was sufficient evidence, as it stood on the trial below, to entitle the plaintiff to have these questions of fact passed on by a jury, and that the refusal to submit them was error. There are some questions which, in the event of the jury, on the re-trial, finding that _the will was procured by undue influence, might have an important bearing on the determination of the case; as, however, they were not distinctly raised and argued, and as a finding by the jury, that there was no undue influence, would, if such finding is not disturbed on appeal, obviate the, necessity of considering these questions, we do not deem it proper or expedient now to pass on them.
Those questions are: (1st.) Is a bona fide purchaser for a valuable consideration under a power of sale .contained in a will, (by reason of his bona fides and payment,) protected from the secret vice in the procurement of the execution of the will by undue influence, to the same extent as a bona fide grantee for a valuable consideration is protected against the fraud of his grantor in obtaining the execution of a deed, which is the source of his title. (18 John. 531.) (2d.) If he is not, then is he not entitled to protection upon equitable principles ? And if so, must he not seek protection on the equity side ? And in that event, is not such protection to be limited simply to making him whole for that which he has parted with ? (3d.) Can the defendants; who do not claim under the purchase from Burrowes, but Simply introduce deeds executed by him for the purpose of showing title out of the plaintiffs, call -to their aid the protection which would be extended to purchasers from Burrowes by reason of their characters as bona fide purchasers, and (4th.) Are the purchasers'from Burrowes such bona fide purchasers as to entitle them to protection.
When these questions are said not to have been presented or argued, certain points of both parties—two of the defendants, (the 4th and 5th,) and four of the plaintiffs, (the 11th, 12th, 13th and 14th)—are not overlooked. As to both those *233 points of the defendant, they are based, as I understand them, on the assumption that the will was valid; that the power of sale did not cease to operate; that the sales in question fell within the power, and there was no evidence of any fraud between Burrowes and the purchaser, to cheat the estate of which Burrowes was trustee. Upon these assumptions his counsel contends that the deeds' cannot be attacked in this action for slight inadequacy of consideration, or for the non-payment of the consideration, and in that conclusion, based on these assumptions, I think he is correct. But if he means to assert the broad proposition, that in an action of ejectment, a deed which is relied on, as passing a legal title cannot be attacked, and shown to be fraudulent and void, by reason whereof no legal title passed by it, I cannot assent to the proposition. (Jackson v. Crafts, 18 John. 110. Jackson v. Hayner, 12 id. 469.) With reference to the second of such points (5th) it is sufficient to say, that if the deed from Burrowes to Harrison is otherwise sufficient to pass a good title to the grantee, the bare fact that it is executed by Burrowes in his individual capacity^ and does not contain a recital of the power of sale, will not defeat its operation. (3 R. S. 5th ed. 28, 844.)
A few words only are necessary with reference to those points of the plaintiffs. With the exception of one (14th) they are all founded on the assumption that the will is Valid, but claim that, notwithstanding this, the plaintiffs are entitled to recover for the reason therein maintained. Thus one (11th) is, that the deed to O’Reilly was not a conveyance with intent to pass the title, but a mere scheme to enable Burrowes to raise money by mortgage. ' The evidence does not establish these facts; it is, therefore unnecessary to consider their legal effect. Another (12th) is, that the conveyance to O’Reilly passed no title, as it was without consideration, and was never delivered. The evidence, however, shows both a consideration and a delivery. A third of those points (13th) is, that the conveyance to Harrison, being executed by Burrowes in his individual capa *234 city passed no title under the power of sale. This has been before remarked on. As to two of the last mentioned three points, (11th and$ 12th,) it may be observed, that the evidence clearly shows that the deeds to O’Reilly and Harrison were both executed with intent to pass title; that both express a valuable consideration, and acknowledge the receipt thereof; in the one case the evidence shows that the consideration was paid by giving back two. purchase money mortgages, (amounting to $9000,) and paying the balance, to wit, ($1000,) by a note. In the other case there is no proof as to how the consideration was paid. Both these transactions come within the legitimate limits of Burrowes’ authority under the power of. sale and re-investment. Assuming the will to be Valid, these deeds operated to pass the legal title; and proof of the bare fact, that the consideration had not been paid, without going to ' the extent of infecting the transaction with fraud (of which there is no evidence here,) could not be admitted in a court of law, to destroy that operation. (McCrea v. Purmort, 16 Wend. 475. Jackson v. Alexander, 3 John. 484.) But where a grantee is obliged to protect himself against a fraud committed by his grantor, by means of his character as a bona fide purchaser, it seems to me it is incumbent cm him to establish that character by proving the actual payment of the money; and, according to the shape the particular case may take, a variety of other matters. He does not in such case take by the deed alone, but by that in conjunction with the bonafides of his purchase.
■ The case of Wood v. Chapin, (3 Kern. 509,) it is true, holds, on the authority of Jackson v. McChesney, (7 Cowen, 360,) that the clause in a deed acknowleding the payment of the purchase money is prima facie evidence of the actual payment thereof, and sufficient, (so far as the necessity of proving actual payment is concerned,) if uncontradicted, to prove the grantee a bona fide purchaser within the meaning of the recording act. By referring to the case in Oowen we *235 find that it asserts the proposition and relies for support on various cases which are cited. Upon looking at those cases, it will be found that the first two, (14 John. 26 and 210,) hold that the receipt in a deed stands oh the same footing as any other receipt, and is, therefore, open to explanation; on the same principle the third case there cited, (6 Cowen, 102,) holds that a receipt in a deed is prima facie evidence against the grantor, (who, by delivering the deed gives the receipt,) that he received the money, precisely the same as any ordinary receipt would be prima facie evidence against the party giving it. These principles .can only be made to sustain the proposition in question by the following train of reasoning: a receipt being prima facie evidence against the one giving it, and necessarily against any one claiming under him, subsequent to his giving it, and the first purchaser by neglecting to record his deed until after the second purchaser has recorded his, being regarded under the recording act as taking subsequent to the second deed, until he proves that the second deed was not made in good faith and for a valuable consideration, he is, (until he' affirmatively disproves the facts which give the second deed priority,) considered as taking from the grantor, subsequent to the giving of the receipt in the first recorded deed; that receipt has the same effect against him as against the grantor, which is, that it is prima facie evidence of the payment of the money, subject to be explained or rebutted by affirmative proof. Having thus examined the foundation of the doctrine of Wood v. Ohapin, for the purpose of ascertaining whether it compels me to hold that the consideration clause in a deed is prima facie evidence of actual payment, sufficient if uncontradicted, to prove the grantor a purchaser for a valuable consideration, as against a person claiming either adversely to the grantor, or under him, by title prior to the execution of the deed containing the consideration clause, in any case other than one arising under the recording act, I am satisfied that it does not. The plaintiffs in this case *236 claim adversely to the grantor (Burrowes;) they do not claim through or in privity with him, but seek to avoid his acts, and amongst them the deed in question, on the ground of a fraud committed by him on their ancestor, by means whereof he procured the instrument, under which he assumed to make the conveyance. Neither the party who has committed the fraud, nor those claiming under him, can be permitted to give in evidence oral or written statements made by them, as evidence of the trutii of the facts stated, and thus create evidence in their own favor, to disprove the fraud or avoid its effect as against persons, not privies, but strangers to the statements so made.
By the last of such points of the plaintiffs, (14th,) they claim that Harrison was not a bona fide purchaser, because he had notice that the title would he contested, before be paid off certain mortgages on the property. Aside from other objections to the soundness of that point, the facts upon which it is based never existed. The evidence, which it is claimed establishes them, is the testimony of Edward W. Gone; he testified that he acted for John Harrison during the latter part of his life, but that in relation to the mortgages in question, he acted for the executors of James Bogert, the parties who loaned to John Harrison; that he did not know that he heard any thing of the plaintiff’s claim except from Mr. Bolton; that he did not know, that that was before he paid the money; that it was quite possible it was; that his abstract did not show that he had •notice before he paid the money, but did show that after the loan was closed, this claim was made and he made an entry of it. This is the only evidence tending to show notice to Harrison. It is open to two objections ; first, it is wholly insufficient to show notice even to Mr. Cone prior to the payment of the money; and secondly, Mr. Cone was not acting for or as the agent of Mr. Harrison in this matter. Notice to him, therefore, would not be notice to Harrison; unless he communicated it to Harrison, of which there is no *237 evidence. There are, perhaps, other objections to the efficacy of this alleged notice, which it is unnecessary to consider.
The exceptions which are sustained, require a new trial, which is ordered, with costs to abide the event,
Monell, J. dissented.
New trial granted.